LEXSEE 2001 US DIST LEXIS 14772

**COMMUNITIES FOR EQUITY, et al., Plaintiffs, v. MICHIGAN HIGH SCHOOL ATHLETIC ASSOCIATION, et al., Defendants.**

**Case No. 1:98-CV-479**

**UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN, SOUTHERN DIVISION**

*2001 U.S. Dist. LEXIS 14772*

**September 14, 2001, Decided
September 14, 2001, Filed**

**DISPOSITION:** [*1] Plaintiffs' Renewed Motion in Limine to Exclude Certain Defense Witnesses (Dkt. No. 443) GRANTED IN PART and DENIED IN PART. Defendants' Motion in Limine to Strike Some of Plaintiffs' Trial Witnesses (Dkt. No. 440) GRANTED IN PART and DENIED IN PART. Plaintiffs' Renewed Affirmative Motion in Limine Re: Certain Plaintiff Trial Witnesses (Dkt. No. 432) GRANTED IN PART and DENIED IN PART.

**LexisNexis (TM) HEADNOTES - Core Concepts:**

**COUNSEL:** For COMMUNITIES FOR EQUITY, DIANE MADSEN, JAY ROBERTS-EVELAND, plaintiffs: H. Rhett Pinsky, Pinsky, Smith, Fayette & Hulswit, Grand Rapids, MI.

For COMMUNITIES FOR EQUITY, DIANE MADSEN, JAY ROBERTS-EVELAND, plaintiffs: Robin K. Bohnenstengel, Piper, Marbury, Rudnick & Wolfe, LLP, Baltimore, MD.

For COMMUNITIES FOR EQUITY, DIANE MADSEN, JAY ROBERTS-EVELAND, plaintiffs: Philip L. Cohan, Piper, Marbury, Rudnick& Wolfe, LLP, Marcia D. Greenberger, Neena Chaudhry, Barbara A. Burr, Washington, DC.

For COMMUNITIES FOR EQUITY, DIANE MADSEN, JAY ROBERTS-EVELAND, plaintiffs: Kristen Galles, Equity Legal, Alexandria, VA.

For MICHIGAN HIGH SCHOOL ATHLETIC ASSOCIATION, defendant: Carole D. Bos, Bos & Glazier, Grand Rapids, MI.

For MICHIGAN HIGH SCHOOL ATHLETIC ASSOCIATION, defendant: Edmund [*2] J. Sikorski, Ann Arbor, MI.

For JOHN ROBERTS, KEITH ALTO, GERALDINE DAVID, KEITH ELDRED, PAUL ELLINGER, ERIC FEDERICO, DAN FLYNN, MARGRA GRILLO, ROBERT GRIMES, NORM JOHNSON, DEWAYNE JONES, DENNIS KNIOLA, WILLIAM NEWKIRK, THOMAS RASHID, ROBERT RIEMERSMA, RANDY SALISBURY, JOYCE SEALS, MICHAEL SHIBLER, CHRISTI BRILINSKI, EUNICE MOORE, defendants: William M. Azkoul, Azkoul & Azkoul, Grand Rapids, MI.

USA, amicus: Charles R. Gross, U.S. Attorney's Office, Western District of Michigan, Grand Rapids, MI.

USA, amicus: Sarah A. Dunne, U.S. Department of Justice, Washington, DC.

**JUDGES:** RICHARD ALAN ENSLEN, United States District Judge.

**OPINIONBY:** RICHARD ALAN ENSLEN

**OPINION:**

This matter is before the Court on Plaintiffs' Renewed Motion *in Limine* to Exclude Certain Defense Witnesses n1; Defendants' Motion *in Limine* to Strike

Some of Plaintiffs' Trial Witnesses; and Plaintiffs' Renewed Affirmative Motion *in Limine* Re: Certain Plaintiff Trial Witnesses. In summary, Plaintiffs and Defendants are seeking exclusion of witnesses the other side wishes to offer at trial because of alleged discovery rule violations. The Court will grant in part and deny in part Plaintiffs' Renewed Motion, [*3] will grant in part and deny in part Defendants' Motion, and will grant in part and deny in part Plaintiffs' Renewed Affirmative Motion.

n1 Plaintiffs' original Motion *in Limine* to Exclude Certain Defense Witnesses was not docketed in the Court's case file. The Court will therefore treat Plaintiffs' Renewed Motion as the original Motion in rendering its decision. Defendants filed an Opposition to the original Motion and to the Renewed motion, so Defendants have had an opportunity to respond to any and all issues.

## I. RELEVANT LAW

"It is well established that the scope of discovery is within the sound discretion of the trial court." *Lavado v. Keohane, 992 F.2d 601, 604 (6th Cir. 1993)* (citation omitted). The Sixth Circuit reviews a decision to invoke discovery sanctions under Federal Rule of Civil Procedure 37 for abuse of discretion. *Beil v. Lakewood Eng'g & Mfg. Co., 15 F.3d 546, 551 (6th Cir. 1994).*

Federal Rule of Civil Procedure 26(a)(3) governs required pretrial [*4] disclosures, obligating parties to provide each other and the Court with, among other items, information regarding witnesses expected to be called at trial for purposes other than impeachment. Fed. R. Civ. P. 26(a)(3). "... Unless otherwise directed by the court, these disclosures must be made at least 30 days before trial." *Id.* "Unless the court orders otherwise, all disclosures under Rules 26(a)(1) through (3) must be made in writing, signed, and served." Fed. R. Civ. P. 26(a)(4).

Federal Rule of Civil Procedure 37 provides for a party's failure to make a disclosure by the required date. Fed. R. Civ. P. 37. "A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial ... any witness or information not disclosed. In addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions." Fed. R. Civ. P. 37(c)(1).

A party may thus be assessed a sanction, including preclusion of the witness from testifying, [*5] if the failure to earlier disclose was without "substantial justification" or creates "harm" to the other party. The Sixth Circuit uses four factors to review a Rule 37 sanction: first, whether the party's failure to cooperate in discovery is due to willfulness, bad faith, or fault; second, whether the adversary was prejudiced by the party's failure to cooperate in discovery; third, whether the party was warned that failure to cooperate could lead to the sanction; and fourth, in regard to a dismissal, whether less drastic sanctions were first imposed or considered." *Freeland v. Amigo, 103 F.3d 1271, 1277 (6th Cir. 1997).* Generally, "Rule 37 is written in mandatory terms and is designed to provide a strong inducement for disclosure of Rule 26(a) material." *Ames v. Van Dyne, 1996 U.S. App. LEXIS 29700, *13; 100 F.3d 956* (table) (6th Cir. 1996).

The Sixth Circuit has upheld preclusion of a witness' testimony where it held that the party wishing to call a late-disclosed witness or have the witness testify about late-disclosed matters should have earlier anticipated the need for the witness or for the witness to testify about particular matters. *See, e.g., Ames, 1996 U.S. App. LEXIS 29700, *14; 100 F.3d 956* (table) [*6] (finding party's offered alternate witness probably not a true substitute for original witness who was excluded, and party should have anticipated earlier the possibility that original witness would be excluded); *King v. Ford Motor Co., 209 F.3d 886, 900-01 (6th Cir. 2000), cert. denied, 531 U.S. 960, 148 L. Ed. 2d 298, 121 S. Ct. 386* (Ford's expert precluded from testifying about load limiters where Court found Ford did not disclose in its expert disclosures that its expert would be testifying about load limiters, even though it was on sufficient notice that Plaintiff's expert would offer an opinion on them). Where an expert witness and opinions were disclosed after the due date for expert witness disclosures, the Sixth Circuit also upheld their preclusion because it found that the party's lack of timely investigation of its claim put it at fault. *Rowe v. Case Equip. Corp., 1997 U.S. App. LEXIS 227, *6-7; 105 F.3d 659* (table) (6th Cir. 1997). Generally, the Sixth Circuit has also upheld cases where parties were found to have missed the disclosure deadline merely because they failed to ask for a needed extension or failed to exercise due diligence [*7] in identifying parties on time. *Vaughn v. City of Lebanon, 2001 U.S. App. LEXIS 18935, *29, 2001 WL 966279,* at *7-*10 (6th Cir. Aug. 16, 2001); *Bowe v. Consolidated Rail Corp., 2000 U.S. App. LEXIS 24866, *9; 230 F.3d 1357* (table) (6th Cir. 2000); *Vance v. United States, 1999 U.S. App. LEXIS 14943, *11; 182 F.3d 920* (table) (6th Cir. 1999).

On the other hand, the Sixth Circuit reversed a district court's sanction excluding a witness, and thus dismissing a suit, when plaintiff's attorney failed to file a proposed pretrial order on time, finding that ultimate blame was with defendant for the late proposed order. *Freeland, 103 F.3d at 1277*. However, the circumstances in *Freeland* were egregious. The Court's research did not reveal any Sixth Circuit cases substantially similar to the instant situation, especially involving complex litigation of public interest with a history of discovery problems as contentious as has been the case here. Moreover, Advisory Committee Notes to Rule 37 note that the "substantial justification" and "without harm" provisions of Rule 37 were designed "to avoid unduly harsh penalties." Advisory Committee Notes to 1993 Amendments to Rule 37, 146 F.R.D. 682, 691, [*8] *quoted in* Wright & Miller, *Federal Practice and Procedure*, § 2289.1 at 705 nn.9-10. At least one other circuit, as well, has had occasion to note the implication of a district court's wide discretion in handing out an exclusion sanction:

> It is quite true that as amended, the civil procedure rules make clear that exclusion of evidence is a standard sanction for a violation of the duty of disclosure under Rule 26(a). But this is far from saying that the district court is obligated to exclude evidence based on such a failure when it occurs long before trial and is likely subject to correction without much harm to the opposing party ... .

*Samos Imex Corp. v. Nextel Communications, Inc., 194 F.3d 301, 305 (1st Cir. 1999).*

## II. ANALYSIS OF PLAINTIFFS' RENEWED MOTION TO EXCLUDE DEFENSE WITNESSES

### A. Previously Disclosed Defendants' Witnesses

This Court has re-read the relevant docket entries pertinent to Plaintiffs' complaints. With respect to all of the lay and expert witnesses that were disclosed by both parties, with an exception discussed below, these matters have already been addressed by this Court in its Order denying Plaintiffs' [*9] Objections to United States Magistrate Judge Doyle Rowland's September 8, 1999 Order denying Plaintiffs' Motion to Reconsider the Court's Scheduling Order and to Reinstate the Court's July 14, 1999 Order (Dkt. No. 217).

The Court found there that Plaintiffs' inability to take depositions of Defendants' witnesses was created when both parties failed to comply with Magistrate Judge Rowland's order to submit an agreed upon deposition schedule to the Court and when Plaintiffs failed to take subsequent action in a timely manner. With no deposition schedule submitted, the Court was not in a position to enforce an order against Defendants and extend discovery to ensure Defendants' compliance. Moreover, Plaintiffs waited until four days before discovery was scheduled to end before informing Magistrate Judge Rowland that discovery was not completed and that Defendants failed to honor the agreement alleged between the parties. Magistrate Judge Rowland would not extend discovery at that point. Then, Plaintiffs waited until after the discovery deadline to file a Motion for Reconsideration, which this Court denied.

The Court agrees with Plaintiffs that it would have been better if all of the [*10] parties fully completed discovery, both for the fair trial of this issue and for judicial efficiency. But Plaintiffs' lack of depositions and disclosure information on Defendants' witnesses was already judged to be Plaintiffs' fault, whether or not Defendants also contributed to the problem. This Court will not disturb that previous finding at this date and cause fairness problems.

### B. Newly Disclosed Witnesses

The exception is the group of six witnesses disclosed by Defendants in their proposed pretrial order n2: Tim Coleman, Tim Klein, E. Nick Archer, Joan Rubin, Randy Barkowski, and Keith Amemiya. Defendants were to disclose lay witnesses by January 30, 1999 and expert witnesses by April 1, 1999. Defendants are entitled to add new witnesses after the date disclosure is due if they show "substantial justification" to the Court for the late disclosure or that the late disclosure was "harmless." Defendants, however, have offered no explanation at all in their pleadings why no disclosures were made with regard to these witnesses until the proposed pretrial order. Further, Defendants have not offered any discussion in their pleadings regarding why these six witnesses would [*11] be testifying nor even mention these six witnesses directly.

> n2 The Court assumes this was the proposed pretrial order of May 2001. Neither party provided the Court with the date when these six witnesses were disclosed by Defendants.

Moreover, even if Plaintiffs have some idea about why the last three witnesses in the above list would be testifying, that does not make the failure to disclose them until the proposed pretrial order "harmless." Defendants have not refuted Plaintiffs' assertion that Defendants refused to make these new witnesses available for deposition, so the Court finds that harm to Plaintiffs

would result if these witnesses were allowed to testify. Given the Court's lack of information regarding these witnesses and harm that could result to Plaintiffs, a minor sanction would be inappropriate. Under Rule 37(c), therefore, the Court will exclude the testimony of these six witnesses and will grant Plaintiffs' motion with respect to them.

## III. ANALYSIS OF DEFENDANTS' MOTION TO STRIKE PLAINTIFFS' [*12] WITNESSES AND PLAINTIFFS' AFFIRMATIVE MOTION REGARDING ITS WITNESSES

Defendants ask the Court to exclude ten of Plaintiffs' proposed witnesses: Jack Magelssen n3, Lynn Kostreva, Daphne Smith, Mike Stearn, Tom Lothimer, Mike Sprague, Jim Bellinger, Connie Engel, Terrie Robbie, and Jane Bennett. Defendants object to the first seven because of their disclosure in proposed pretrial orders after the discovery ending date. Defendants object to the last three because Plaintiffs disclosed them with an indication that Plaintiffs believed they would be unlikely to testify at trial. Thus Defendants argue that Plaintiffs prejudiced Defendants by now proposing to call the last three witnesses. Defendants also offer that Plaintiffs' last disclosure of trial witnesses in February 2001 came to Defendants without a signature and by facsimile.

n3 The Court believes this to be the correct spelling of Mr. Magelssen's name after consulting the Kalamazoo/Portage Area phone directory, even though neither party spelled it this way in their pleadings. The Court mentions this only to clarify the individual to whom this Opinion refers.

[*13]

Plaintiffs ask the Court to allow the first seven witnesses listed above to testify as either replacements for previously-disclosed witnesses who have now changed jobs that were relevant to this litigation or have become unavailable to testify by moving out of state, or as newly discovered witnesses. Further, Plaintiffs assert that they disclosed each of these witnesses as soon as they learned of them, in February 2001, and that they have justification for late disclosure.

The Sixth Circuit's Factors in Examining Rule 37 Sanctions

First, this Court finds generally that Plaintiffs' failure to timely identify the witnesses that are the subject of these motions was not due to Plaintiffs' willfulness or bad faith, but can in some cases be attributed to

Plaintiffs' fault. This is discussed on a case-by-case basis below.

Second, this Court finds that whether Defendants would be prejudiced by Plaintiffs' disclosure of each witness until February 2001 is a crucial question for each proposed witness where the Court found no substantial justification for late disclosure, and therefore is discussed below where that is the case. Ultimately, harm to Defendants was significantly lessened [*14] by the fact that Plaintiffs assert that they have affirmatively offered the new witnesses for deposition since February 2001, an assertion that Defendants have not refuted. Defendants only challenge the lateness of disclosure in February 2001 and the manner in which they were notified. Even if Plaintiffs should have filed the February 2001 list of trial witnesses with this court and signed it, Defendants were still put on notice nine months ago that Plaintiffs wished these witnesses to testify and were provided with the expert witness disclosures. So the Court finds that this fact does not affect any calculation of potential harm to Defendants.

Third, the Court finds that both parties were sufficiently warned of possible exclusion of late-disclosed witnesses by Rule 37. Finally, since dismissal based on any precluded witnesses is not an issue in this case, assessment of lesser sanctions takes on lesser importance, but will also be considered as appropriate below.

Daphne Smith and Mike Stearn

The Court finds that there is substantial justification for the late disclosure of Daphne Smith and Mike Stearn, since they replaced earlier disclosed witnesses in relevant occupations [*15] and will offering testimony on presumably the same issues as their predecessors. Further, Defendants were on notice that their predecessors could be called as witnesses, and Mike Stearn was listed as an alternate for his predecessor in the witness disclosure. Moreover, Daphne Smith replaces Sanya Tyler, who was never deposed by Defendants during discovery, so there seems to be little resulting harm to Defendants if Ms. Tyler is replaced. Defendants also did not address these issues in their pleading, so the Court has no reason to believe otherwise.

Jack Magelssen

Jack Magelssen is not Brian Gillis' direct replacement, as Mr. Magelssen coaches volleyball at Portage Northern High School, and Mr. Gillis left a similar position at Plymouth-Salem High School. Presumably, however, both have similar knowledge that is possessed generally by high school volleyball coaches in Michigan, and Plaintiffs have asserted that Mr.

Magelssen has knowledge that makes him a "replacement." In addition, Plaintiffs have represented that Mr. Gillis lives out of state and is no longer available to testify, so it is substantially justified to find another volleyball coach to testify to the same issues. [*16] Moreover, the Court finds substantial justification for his late disclosure since Plaintiffs assert they learned of Mr. Magelssen's identity, and thus his views, only through Defendants' own television ads run with respect to this litigation.

Finally, any harm to Defendants in the February 2001 disclosure because of the particular nuances of Mr. Magelssen's opinions, as they may differ from those of other similarly situated volleyball coaches, is sufficiently cured by Plaintiffs' assertion they have voluntarily made Mr. Magelssen available for deposition by Defendants. While February 2001 was relatively late in this litigation to be taking a deposition, Plaintiffs are substantially justified to replace Mr. Gillis with a replacement coach, and it would be more unfair to prevent Plaintiffs from offering a volleyball coach at all than to require Defendants to take a deposition several months before trial. Therefore, an order will be entered permitting Mr. Magelssen to testify, provided Plaintiffs continue to make him available for deposition.

Lynn Kostreva

Plaintiffs assert that they did not know of Ms. Kostreva until she contacted them and offered to testify about circumstances [*17] in the Upper Peninsula with regard to girls' volleyball, and that they added Ms. Kostreva as soon as they learned about her. This failure to notify does not appear to be due to bad faith. The question is whether the failure is due to Plaintiffs' fault to identify Ms. Kostreva, or someone similarly situated, through investigation of the case. The situation for volleyball teams in the Upper Peninsula is one that Plaintiffs should have uncovered through investigation earlier in the case, and the Court thus finds no substantial justification for the late disclosure of this witness, even though this is not exactly a case of "failure to cooperate in discovery."

Defendants assert generally that they will suffer prejudice that comes from the inability to depose a witness before trial. But the Court finds that the crux of Ms. Kostreva's testimony, as described by Plaintiffs, cannot possibly contain any issues of which Defendants were not already aware. Ms. Kostreva will testify that girls' volleyball teams in neighboring Wisconsin play in a different season from her team, and because of geography, it would be more advantageous for her team to play Wisconsin teams than Lower Peninsula Michigan [*18] teams. Surely, Defendants were necessarily in a better position to know this than Plaintiffs given their

positions and opportunities to learn from high school athletic associations in other states, and this information should not come as a surprise to them. This is similar to cases where parties are aware of witnesses that adverse parties inadvertently failed to list on a pretrial disclosure, or when parties fail to list as a witness an individual that another party has named, where the Advisory Committee Notes to Rule 37 indicate that exclusionary sanctions are not warranted. *See* Advisory Committee Notes to 1993 Amendments to Rule 37, 146 F.R.D. 682, 691, *quoted in* Wright & Miller, *Federal Practice and Procedure*, § 2289.1 at 705 nn.9-10.

Furthermore, it seems that Ms. Kostreva will be a fact witness testifying to basic facts which both sides will argue that the Court should consider in one way or another, or ignore, when drawing legal conclusions. Defendants would have refuted Plaintiffs' legal conclusions from these facts, and still may refute those conclusions, with other facts and with the opinions of Defendants' already-chosen experts. From Plaintiffs' [*19] description, the Court cannot imagine that Ms. Kostreva's role is to offer opinions that Defendants would be able to challenge. Defendants do not now make any argument that they will suffer harm with respect to this particular witness. If Defendants point out in any detail the harm they will suffer at trial, the Court will reconsider the issue of precluding Ms. Kostreva's testimony. At this point, an order will be entered that she be allowed to testify at trial provided that Plaintiffs continue to make her available for deposition. Moreover, the sanction of paying Defendants' attorneys' fees in taking Ms. Kostreva's deposition will be imposed on Plaintiffs, as Plaintiffs are at fault for not identifying her on time.

Jim Bellinger

Jim Bellinger is the parent of a child allegedly disadvantaged by current scheduling. Plaintiffs assert that his daughter Laura would have been recruited to play college volleyball, but because of having to play high school volleyball in the winter, she was unable to participate in USA Volleyball club tournaments and thus missed chances for recruitment. Plaintiffs argue that the cause-and-effect of this situation could not be known until it actually [*20] happened, and therefore late disclosure of Mr. Bellinger is justified. Harm in recruiting is a basic harm that Plaintiffs allege in this lawsuit, however, and Plaintiffs should have anticipated their desire to call someone like Mr. Bellinger since the beginning of the suit. They either should have identified another parent whose child experienced this situation previously or indicated to Defendants and the Court that this situation would necessitate late disclosure of a

witness. The late disclosure of Mr. Bellinger was not justified.

Moreover, there is palpable harm to Defendants in this situation created by the late disclosure. Athlete recruiting is a process presumably influenced by a number of factors, one of which may be seasons scheduling. Defendants are entitled to cross-examine a parent-witness about other possible causes of a failure to recruit his or her child, which necessarily requires background investigation and the ability to investigate the particular athlete's situation. This is entirely different from a coach or a similar witness speaking generally about patterns in recruiting and his or her belief that, as viewed over a career of athletes, recruiting is materially [*21] affected by seasons scheduling. Even if Defendants have known about Plaintiffs' desire to call Mr. Bellinger since February 2001 and chose not to depose him since, the sheer volume of witnesses and exhibits in this litigation necessitated the deadlines for naming witnesses in the first place. A late deposition would not allow Defendants the full preparation to which they are entitled to meet Mr. Bellinger's testimony at trial, the nature of which would probably require investigation by Defendants, and the Court has no other appropriate options at this point. The Court has little doubt that hearing from Mr. Bellinger would have been instructive to the issues in this litigation, and the Court further regrets that parties who feel seriously aggrieved will not be able to speak during their day in court while this Court is weighing whether a civil rights violation has occurred. However, the Court believes that the prejudice to Defendants would simply be too great with respect to this witness, and Defendants, too, are entitled to a fair day in court. Therefore, an order will be entered precluding Mr. Bellinger from testifying.

Tom Lothimer and/or Mike Sprague

Plaintiffs argue that [*22] they added Mr. Lothimer and Mr. Sprague to address Defendants' arguments, as Plaintiffs phrase them, that any discrimination the individual plaintiffs have suffered was perpetrated by their school districts and not the MHSAA. On the same token, Plaintiffs plan to offer the testimony of these two Northview school board members to bolster their claim that the MHSAA controls high school athletics in Michigan such that the MHSAA is covered under Title IX. Plaintiffs do not assert, however, that they recently learned of such a line of argument by the MHSAA and the subsequent need to present testimony on these points, and this assertion would be difficult to make. Therefore, the Court finds that there is no substantial justification for the late disclosure of these witnesses.

However, the Court finds that any harm present in this late disclosure is too minimal to exclude these witnesses, as the MHSAA had to expect testimony from Plaintiffs attempting to prove that school districts have no practical choice but to follow what the MHSAA does. Any harm to Defendants could have been cured by taking a deposition because the bases of these witnesses' opinions will be facts that are very familiar [*23] to both parties and supported by various proposed exhibits. Facts that Defendants would have used to rebut these witnesses' opinions are the same ones that Defendants would have used had these witnesses been disclosed on time. Given the nature of expected testimony by the school board members, the disclosure of these witnesses in February 2001 was sufficient time to prepare. The sanction of paying Defendants' attorneys' fees in taking Mr. Lothimer's and Mr. Sprague's depositions will be imposed on Plaintiffs, as Plaintiffs are at fault for not identifying them on time.

With respect to the last three witnesses Defendants wish to be excluded, Connie Engel, Terrie Robbie, and Jane Bennett, to whom Defendants object because they allege Plaintiffs led them to believe that they would not be called, the Court will also permit them to testify. Even if Plaintiffs indicated in initial disclosures that Connie Engel and Terrie Robbie would not be likely to testify, Defendants' failure to depose them represents a strategic decision to conserve resources and not a problem of prejudice that the Court needs to correct. Similarly, even if Plaintiffs did in fact indicate Jane Bennett may be called [*24] as a witness depending on the substance of her deposition, and then never deposed her, Defendants' decision to view this as Plaintiffs' intent not to call Ms. Bennett represents strategy. Both sides have presented long lists of potential witnesses because of the complexity of the issues involved in this litigation; both sides complain of being unable to depose for a variety of reasons every witness the other side now plans to call. However, the public interest involved in this case requires that the Court reject these complaints except in extreme cases requiring equitable correction at this late date, so that this litigation may be finally decided. Defendants have not presented any credible allegation or argument that Plaintiffs' designation of these witnesses was in bad faith or designed to divert Defendants' attention from them, and as such, Defendants' failure to depose these three witnesses during discovery does not constitute prejudice created by Plaintiffs.

IV. CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part Plaintiffs' Renewed Motion in Limine to Exclude Certain Defense Witnesses. The Court will grant in part and deny in part [*25] Defendants' Motion in Limine to Strike Some of Plaintiffs' Trial Witnesses. The Court will grant in part and deny in part

2001 U.S. Dist. LEXIS 14772, *

Plaintiffs' Renewed Affirmative Motion *in Limine* Re: Certain Plaintiff Trial Witnesses.

An Order consistent with this Opinion will follow.

DATED in Kalamazoo, MI:

9.14.01

RICHARD ALAN ENSLEN

United States District Judge

**ORDER**

In accordance with an Opinion filed this day,

**IT IS HEREBY ORDERED** that Plaintiffs' Renewed Motion *in Limine* to Exclude Certain Defense Witnesses (Dkt. No. 443) is **GRANTED IN PART** and **DENIED IN PART**. Testimony from Tim Coleman, Tim Klein, E. Nick Archer, Joan Rubin, Randy Barkowski, and Keith Amemiya is excluded from trial.

**IT IS FURTHER ORDERED** that Defendants' Motion *in Limine* to Strike Some of Plaintiffs' Trial Witnesses (Dkt. No. 440) is **GRANTED IN PART** and **DENIED IN PART**. Testimony from Jim Bellinger is excluded from trial.

**IT IS FURTHER ORDERED** that Plaintiffs' Renewed Affirmative Motion *in Limine* Re: Certain Plaintiff Trial Witnesses (Dkt. No. 432) is **GRANTED IN PART** and **DENIED IN PART**. Testimony from Jim Bellinger is excluded from trial. [*26]

**IT IS FURTHER ORDERED** that Plaintiffs continue to make Jack Magelssen, Lynn Kostreva, Daphne Smith, Mike Stearn, Tom Lothimer, and Mike Sprague available for deposition by Defendants.

**IT IS FURTHER ORDERED** that Plaintiffs pay the costs of deposing Lynn Kostreva, Tom Lothimer, and Mike Sprague, if Defendants chose to depose them.

DATED in Kalamazoo, MI:

9.14.01

RICHARD ALAN ENSLEN

United States District Judge