IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION (DAYTON)

| | |
|---|---|
| PLAYTEX PRODUCTS, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>THE PROCTOR & GAMBLE DISTRIBUTING COMPANY, an Ohio corporation, and THE PROCTOR & GAMBLE COMPANY, an Ohio corporation,<br><br>Defendants. | CASE NO. C-1-02-391<br><br>(Hon. Thomas M. Rose) |

**PLAYTEX'S JOINT OPPOSITION TO DEFENDANTS' (A) MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT BASED ON MARKMAN RULING (DKT. 96), AND (B) MOTION TO EXCLUDE THE OPINIONS IN PLAINTIFF'S SUPPLEMENTAL EXPERT REPORTS (DKT. 94).**

TABLE OF CONTENTS

Page

I.    Introduction..................................................................................................................1

II.    Argument ....................................................................................................................2

    A.    Legal Standard For Summary Judgment............................................................2

    B.    Tampax Pearl's Finger Grip Comprises "Two Opposite Or Opposed Surfaces That Are Flat Within A Geometric, Manufacturing Tolerance."..............3

        1.    The Court's Claim Construction Does Not Exclude All Curved Surfaces...................................................................................................3

        2.    The Claim Language Only Requires That A Portion Of The Finger Grip Has "Substantially Flattened Surfaces."..............................................7

        3.    "Substantially Flattened Surfaces" Is A Defined Term That Does Not Cover Perfectly Cylindrical Surfaces.....................................................9

    C.    Tampax Pearl's Finger Grip Enables A User To Comfortably Eject And Control The Position Of The Tampon.. ................................................................10

    D.    The Court's Claim Construction Does Not Bar Playtex's Doctrine Of Equivalents Claim...............................................................................................12

    E.    Playtex's Experts' Infringement Opinions Are Consistent With The Court's Claim Construction. ..................................................................................14

III.    Conclusion ................................................................................................................15

TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adickes v. S.H. Kress & Co.*
    398 U.S. 144 (1970) .................................................................................................... 2

*Celotex Corp. v. Catrett*
    477 U.S. 317 (1986) .................................................................................................... 2

*Electro Scientific Indus. Inc. v. Dynamic Details, Inc.*
    307 F.3d 1343 (Fed. Cir. 2002) ................................................................................... 2

*Ethicon Endo-Surgery, Inc. v. United States Surgical Corp.*
    149 F.3d 1309 (Fed. Cir. 1998) ................................................................................... 2

*Georgia-Pacific Corp. v. United States Gypsum Co.*
    195 F.3d 1322 (Fed. Cir. 1999) ................................................................................... 8

*K-2 Corp. v. Salomon S.A.*
    191 F.3d 1356 (Fed. Cir. 1999) ................................................................................... 9

*Mossman v. Broderbund Software*
    51 U.S.P.Q.2d 1752 (E. D. Mich. 1999) ..................................................................... 8

*Overhead Door Corp. v. Chamberlain Group, Inc.*
    194 F.3d 1261 (Fed. Cir. 1999) ................................................................................. 12

*SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*
    242 F.3d 1337 (Fed. Cir. 2001) ................................................................................. 10

*Vitronics Corp. v. Conceptronic, Inc.*
    90 F.3d 1576 (Fed. Cir. 1996) ................................................................................ 7, 9

**Statutes**

Fed. R. Civ. Proc. 56(c) .......................................................................................................... 2

Fed. R. Civ. Proc. 56(e) .......................................................................................................... 2

**Other Authorities**

Patent and Trademark Office, Department of Commerce, *Manual of Patent Examining Procedure* (8th ed. 2003) ............................................................................................. 8

I.      **INTRODUCTION**

P&G's summary judgment motion should more accurately be called "P&G's Motion For Reargument Of Claim Construction" because that's what it really is. During the *Markman* proceedings, P&G proposed a construction of the claim term "substantially flattened surfaces" that included a requirement that the surfaces be "not curved." The Court rejected that aspect of P&G's proposed construction. Another aspect of P&G's proposed construction was that the surfaces need only be flat within a "geometric, manufacturing tolerance" – which includes slightly curved surfaces lying within a manufacturing tolerance for flatness. The Court adopted that aspect of P&G's construction, and it held that the term "substantially flattened surfaces" encompasses a device with "two opposite or opposed surfaces that are flat within a geometric, manufacturing tolerance . . ." In accordance with the strict letter of the Court's construction, Playtex applied the industry gold-standard "geometric, manufacturing tolerance" for flat surfaces to P&G's own measurements of Tampax Pearl. The result was that a significant portion – 7.10 mm long – of Tampax Pearl's finger grip lies within the manufacturing tolerance for flat surfaces.

Now that Playtex has shown that Tampax Pearl is a device with "two opposite or opposed surfaces that are flat within a geometric, manufacturing tolerance," P&G is asking the Court to rewrite its claim construction to exclude all curvature and cover only perfectly flat devices. However, this previously-rejected construction still makes no sense because, as P&G told the Court during the *Markman* proceedings, it is impossible to make a perfectly flat surface due to limitations in the manufacturing process. The Court should again reject this proposed construction, and it should deny P&G's motion for summary judgment.

In conjunction with its summary judgment motion, P&G also seeks to exclude Playtex's experts' supplemented infringement opinions for being inconsistent with P&G's

1

rejected "not curved" claim construction. However, Playtex's experts properly applied the Court's "geometric, manufacturing tolerance" claim construction in their infringement analyses and P&G's motion to exclude Playtex's experts' opinions should be denied.

## II. ARGUMENT

### A. Legal Standard For Summary Judgment

Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Proc. 56(c). The moving party bears the initial responsibility of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). If the moving party meets its burden, the non-moving party must then set forth facts showing that there is a genuine issue for trial. Fed. R. Civ. Proc. 56(e). When viewing the evidence, all ambiguities and inferences to be drawn from the underlying facts should be resolved in favor of the party opposing the motion, and all doubts as to the existence of a genuine issue for trial should be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970).

A determination of infringement requires a two step analysis. "First, the claim must be properly construed to determine its scope and meaning. Second, the claim as properly construed must be compared to the accused device or process." *Ethicon Endo-Surgery, Inc. v. United States Surgical Corp.*, 149 F.3d 1309, 1315 (Fed. Cir. 1998). Infringement is a question of fact. *Electro Scientific Indus. Inc. v. Dynamic Details, Inc.*, 307 F.3d 1343, 1347 (Fed. Cir. 2002). "Therefore, a trial court may not resolve infringement on summary judgment unless no genuine factual issue remains." *Id.* Summary judgment is inappropriate in this case because the Court has already construed Claim 1 of the '178 patent to encompass a device with "two opposite surfaces that are flat within a geometric, manufacturing tolerance," and the evidence

shows that a significant portion of Tampax Pearl's finger grip (7.1 mm in length) falls within the applicable manufacturing flatness tolerance.

### B. Tampax Pearl's Finger Grip Comprises "Two Opposite Or Opposed Surfaces That Are Flat Within A Geometric, Manufacturing Tolerance."

#### 1. The Court's Claim Construction Does Not Exclude All Curved Surfaces.

In its Pre-Markman Hearing Brief, P&G proposed the following definition for the disputed claim term "two diametrically opposed, substantially flattened surfaces:"

> *Not curved*; two diametrically opposed surfaces that are flat within a geometric, manufacturing tolerance; the term also permits a flat surface to have imperfections or to have surface features such as ribs.

(Dkt. 38, p. 1) (emphasis added). In support of the "not curved" aspect of its proposed construction, P&G argued that the intrinsic evidence demonstrates that the claim term "substantially flattened surfaces" should be interpreted to mean surfaces that are "as flat as technology allows or makes practicable; in other words, *not curved*." *Id.* at p. 7 (emphasis added).

With respect to the "geometric, manufacturing tolerance" aspect of its proposed construction, P&G explained that "limitations in manufacturing processes preclude a plastic part from being made perfectly flat, so it is general practice in manufacturing to specify a 'flatness tolerance' – a target that is acceptable and practicable within the limitations of the process."[1] *See Id.* at pp. 18. A flatness tolerance simply specifies the distance between two parallel lines. The region between the two parallel lines is called the "tolerance zone." *Id.* (relying on *The*

---

[1] For example, due to the thermodynamic properties of plastic, an injection molded plastic part like Tampax Pearl will shrink unevenly and become warped (*i.e.,* curved). This is the same reason that flat potato chips become curved when cooked. *See* Declaration Of Allon Stabinsky In Support Of Playtex's Joint Opposition ("Stabinsky Decl.") Exh. A p. 290, l. 12 – p. 298, l. 14.

3

*Fundamentals of Tool Design* and *Technical Graphics Communications* treatises). Any surface lying within the tolerance zone – even if not perfectly flat – is deemed a "flat" surface. In fact, as shown in the treatises above relied on by P&G, even slightly curved surfaces may be deemed "flat" if they lie within the flatness tolerance zone:



*Id.*, Exh. 12 at Exh. E p. 579 & Exh. H p. 762.

Thus, P&G's proposed construction was internally inconsistent because it included the concept of a "manufacturing tolerance" (which allows for curvature within the flatness tolerance zone) but, at the same time, it specified that the surfaces must be "not curved." The Court's claim construction resolved this inconsistency by rejecting the "not curved" aspect of P&G's proposed construction, and adopting only the "manufacturing tolerance" aspect of P&G's proposed construction:

> The Court hereby **CONSTRUES** claim 1 to encompass a device with "two opposite surfaces that are flat within a geometric, manufacturing tolerance; the flat surfaces may or may not have imperfections or surface features such as ribs or treads."

Memorandum Opinion, p. 14.

4

Playtex's experts, Mario Turchi and Evan Hutchison, thereafter followed the letter of the Court's claim construction, and they analyzed whether Tampax Pearl is a device with "two opposite surfaces that are flat within a geometric, manufacturing tolerance." *See* Defendants' Motion For Summary Judgment Of Non-Infringement ("S.J. Mtn.") (Dkt. 96) Exh. E at pp. 2-3, Exh. D at pp. 1-2. Since the Court did not specify which manufacturing tolerance to apply to Tampax Pearl's finger grip, they followed standard industry practice and used the flatness tolerance for injection molded Low Density Polyethylene promulgated by The Society of The Plastics Industry, Inc. ("SPI"). *Id.* The SPI tolerance is widely regarded as the industry "gold standard" and even Chevron, who manufactures the plastic used in Tampax Pearl, directed Playtex to use the SPI standard.[2] Stabinsky Decl. Exh. B p. 414, l. 10 – p. 419, l. 8. Playtex conservatively applied the most rigorous SPI flatness tolerance (which specified a tolerance zone of 0.610 mm) to measurements of Tampax Pearl's finger grip taken by P&G's own expert, James Moller. The result of this analysis is that 7.10 mm of Tampax Pearl's finger grip lies within the SPI tolerance zone. *See* S.J. Mtn. p. 7. Thus, both Turchi and Hutchison correctly concluded that Tampax Pearl infringes Claim 1 of the '178 patent because it is a device with "two opposite or opposed surfaces that are flat within a geometric, manufacturing tolerance." *See* S.J. Mtn. Exh. E at p. 3, Exh. D at p. 2.

Having dug itself into a hole by successfully urging the Court to adopt the concept of a manufacturing tolerance (which covers the slight curvature in Tampax Pearl), P&G is now trying to resuscitate its previously rejected "not curved" definition. P&G's argument that the Court's construction of "substantially flattened surfaces" purportedly excludes any and all curvature is based entirely on a single sentence of dicta from the section of the Court's

---

[2]   P&G does not specify its own manufacturing tolerance for the amount of curvature in the finger grip. *See* S.J. Mtn. Exh. E p. 4.

Memorandum Opinion discussing a different claim term – "angled shoulder surfaces" – which states that:

> In essence, Proctor & Gamble asserts that the phrase [angled shoulder surfaces] does not encompass an angled formed of two curves, while Playtex asserts it does, though the existence of curved lines in Playtex's proposed construction is dependent on the construction of "substantially flattened surface," which the Court has decided excludes curvature in section IV.B of this opinion.

Memorandum Opinion, p. 12. However, this dicta must be read in light of the Court's construction of "substantially flattened surfaces" as "two opposite or opposed surfaces that are flat within a geometric, manufacturing tolerance." As explained above, all plastic parts – even those intended to be perfectly flat – necessarily have some degree of curvature due to manufacturing processes. A flatness tolerance defines the amount of acceptable curvature a part may have before it is no longer deemed "flat." Accordingly, the "geometric, manufacturing tolerance" in the Court's construction necessarily allows a small amount of curvature. The dicta above merely indicates that greater amounts of curvature – which do not lie within the flatness tolerance – are not covered by the Court's claim construction. Indeed, a slightly curved surface, such as Tampax Pearl's finger grip, is deemed "flat" – not curved – within the Court's construction because it lies within the "geometric, manufacturing tolerance."

   P&G's attempt to the read the words "any and all" curvature into the Court's dicta must be denied. First of all, P&G's proposed interpretation of the Court's dicta would make it entirely inconsistent with the Court's claim construction. A surface cannot have some curvature (*i.e.,* within a flatness tolerance) and be "not curved" at the same time. P&G is essentially asking the Court to change its construction of "substantially flattened surfaces" from "two opposite or opposed surfaces that are flat within a geometric, manufacturing tolerance" to "perfectly flat" (*i.e.* excluding *any and all* curvature). But this construction would make no

6

sense because, as P&G explained to the Court, "limitations in manufacturing processes preclude a plastic part from being made perfectly flat." P&G Pre-Markman Hearing Brief p. 18. A claim construction that excludes any and all curvature could not cover any device, including the preferred embodiment. As this Court stated, a construction that excludes a preferred embodiment is "rarely, if ever, correct." Memorandum Opinion p. 8 (citing *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996)).

In any event, even if the Court were to rewrite its claim construction to exclude all curvature, summary judgment would still be inappropriate because there are perfectly flat regions of Tampax Pearl's finger grip. Contrary to P&G's false assertion, Playtex does not agree that "there is no flat portion" of the finger grip. S.J. Mtn. p. 5. Turchi and Hutchison found that P&G's own measurements of Tampax Pearl establish that a portion of the finger grip is perfectly flat. *See id.* Exh. E at pp. 2-3 ("Dr. Moller's table shows that there are two flat surfaces on the Pearl Plastic's finger grip area."), Exh. D at p. 3 ("In fact, although not required by the Court's claim construction, Tampax Pearl's finger grip is comprised of two perfectly flat surfaces.").

  **2. The Claim Language Only Requires That A Portion Of The Finger Grip Has "Substantially Flattened Surfaces."**

Because it is undisputed that a 7.1 mm portion of the finger grip falls within the SPI manufacturing tolerance, P&G asserts that the "substantially flattened" claim language purportedly requires that the finger grip *as a whole* – not just part of it – must lie within the manufacturing tolerance. *Id.* at p. 7. However, P&G's assertion is contrary to the plain language of Claim 1 which states in part:

> a rearward portion adapted to partially house and engage said plunger, said rearward portion of said barrel *comprising* two diametrically opposed, substantially flattened surfaces . . .

7

'178 patent, col. 6 ll. 10-13 (emphasis added). "Comprising" is a term of art used in claim language which is synonymous with "including" or "containing." Patent and Trademark Office, Department of Commerce, *Manual of Patent Examining Procedure* ("*MPEP*"), § 2111.03 (8th ed. 2003).[3] "Comprising" is an open-ended term, which means that a device with additional unclaimed elements will nevertheless infringe if it contains the claimed elements. Any device with a rearward portion that includes or contains "substantially flattened surfaces" (such as Tampax Pearl) meets this claim limitation, even if the rearward portion also has curved surfaces that lie outside the flatness tolerance zone. Accordingly, the claim language only requires that a portion of the device has "substantially flattened surfaces." *See, e.g., Mossman v. Broderbund Software*, 51 U.S.P.Q.2d 1752, 1758 (E. D. Mich. 1999) ("It is well settled in patent law that the word "comprises" means that the recited elements are only *part of the device*.") (emphasis added).[4]

Importantly, the claim language does not use the narrower term "consisting of," which is a closed-ended term that excludes any element not specified in the claim. *MPEP* § 2111.03; *Georgia-Pacific Corp. v. United States Gypsum Co.*, 195 F.3d 1322, 1327-28 (Fed. Cir. 1999) (following *MPEP* definitions and stating that "it is clear that 'comprise' is a broader term than 'consist.'"). If the term "consisting of" is used, an infringing device must consist of *only* the claimed elements, and a device with additional elements will not infringe. *Id.* P&G asserts that: "The specification consistently refers to the finger grip as *consisting of* the two diametrically opposed, substantially flattened surfaces and the angled shoulders." S.J. Mtn. p. 9 (emphasis added). This is nothing more than an improper attempt to change the claim language from "comprising" to "consisting of." *See K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1364

---

[3]   Attached as Exhibit H to the Stabinsky Declaration.
[4]   Attached as Exhibit I to the Stabinsky Declaration.

(Fed. Cir. 1999) ("Courts do not rewrite claims; instead, we give effect to the terms chosen by the patentee").

P&G's incorrect assertion that the entire rearward portion must consist only of "substantially flattened surfaces" is also inconsistent with P&G's prior submissions to the Court. In its Motion For Summary Judgment Of Invalidity Of Claims 1 and 2 Of The '178 Patent (Dkt. 49), P&G argued that a prior patent application (the Tampax GB 684,290 application) invalidates Claim 1 because it disclosed a tampon applicator with supposedly "substantially flattened" depressions in the rearward portion of a cylindrical barrel. *See* Dkt 49, pp. 7-8. Thus, the "substantially flattened" depressions were only a portion – not the *whole* – of the rearward section of the applicator. Indeed, just days *after* filing this motion, P&G submitted supplemental expert reports stating that the Tampax application discloses "substantially flattened surfaces" even though only a very small portion of the rearward section of the applicator purportedly lies within the manufacturing tolerance zone for flat surfaces. *See* Stabinsky Decl. Exh. C p. 12, Exh. H.

   **3.** **"Substantially Flattened Surfaces" Is A Defined Term That Does Not Cover Perfectly Cylindrical Surfaces.**

P&G criticizes the Court's "geometric, manufacturing tolerance" construction because minute portions of a perfect cylinder could conceivably fall within the tolerance zone. S.J. Mtn. pp. 10-12. P&G asserts that this supposedly means that a perfect cylinder could be a "substantially flattened surface," which P&G concedes is a result forbidden by the '178 patent because Playtex expressly disavowed cylinders from its definition of "substantially flattened." *Id.* at p. 10. P&G's criticism is unfounded and is based on a misapprehension of law. Patent law allows the patentee to be his own lexicographer and to assign any meaning he wants to a word. *See Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996); *SciMed Life Sys.,*

*Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1344 (Fed. Cir. 2001) (holding that "[w]here the specification makes clear that the invention does not include a particular feature, that feature is deemed to be outside the reach of the claims of the patent, even though the language of the claims, read without reference to the specification, might be considered broad enough to encompass the feature in question.").

As P&G has conceded, the term "substantially flattened surfaces" *by definition* does not cover perfect cylinders so it is irrelevant whether or not some tiny portion of a cylinder could lie within the SPI tolerance zone. It is for this reason that Hutchison correctly concluded that it would be "totally inappropriate" to apply the SPI flatness tolerance to a cylinder and it wouldn't be "related to this case at all." Stabinsky Decl. Exh. A p. 277, l. 14 – p. 278, l. 11.

    C.    **Tampax Pearl's Finger Grip Enables A User To Comfortably Eject And Control The Position Of The Tampon.**

Contrary to P&G's assertion, there is voluminous evidence that Tampax Pearl meets the limitations of the last clause of Claim 1 of the '178 patent[5], which states:

> whereby said flattened surfaces and said transition section provide
> a finger and thumb hold enabling a user to comfortably eject and
> control the position of said tampon.

'178 Patent col. 6 ll. 14 – 17. Indeed, the increased comfort from Tampax Pearl's finger grip is one of P&G's main selling points. The Tampax Pearl website proclaims that "[t]he grip's contoured shape makes it easier to hold, enabling you to position the applicator comfortably, gently, and effectively." Stabinsky Decl. Exh. D. P&G's head of product development for

---

[5]    It is odd that P&G now argues that Tampax Pearl does not meet the additional limitations of Claim 1's "whereby" clause. In a previous summary judgment motion, P&G took the *exact opposite* position and argued that as a matter of law "a 'whereby' clause that merely states the results of the limitations in the claims adds nothing to the patentability or substance of the claim." Defendants' Motion For Summary Judgment Of Invalidity Of Claims 1 And 2 Of The '178 Patent (Dkt. 49 at p. 9).

10

Feminine Care products, Joan Szkutak, who was also P&G's 30(b)(6) witness for the topic of infringement, testified that:

> Q: So it is possible that the grip area of the Pearl Plastic could provide a finger and thumbhold to some consumers that would enable those consumers to comfortably eject and control the position of the tampon?
>
> A: Yes.

Stabinsky Decl. Exh. L p. 21, ll. 1-6. Szkutak later confirmed that P&G's consumer testing showed that consumers found Tampax Pearl's finger grip easier to hold:

> Q: Is it true that consumers responded better to a flat versus a round grip?
>
> A: Consumers, as in any group, you're going to see some consumers like certain things and others that like others. In this group it appears we had a number of consumers that felt the flat grip, as it's referred to, was easier to hold.

*Id.* at p. 145, ll. 15-21. P&G executive Alan Maingot, the Tampax Pearl initiative leader, agreed that Tampax Pearl's "flat finger grip provides, easy, ergonomic insertion and expulsion of the tampon" and that "the recessed grip with the shoulders that you can apply – you can push against is what provides the comfortable insertion." Stabinsky Decl. Exh. G p. 75, l. 2 – p. 81, l. 18. Similarly, Playtex's experts have also explained that Tampax Pearl's flattened surfaces and transition section provide increased comfort and control. Stabinsky Decl. Exh. F at p. 5 ("The Pearl applicator has substantially flattened surfaces and a transition section which provide a holding area for the finger and thumb, enabling the user to more comfortably eject and control insertion of the tampon."), Exh. E at p. 4 ("[T]he substantially flattened surfaces of the rearward portion and the transitional section provide a finger and thumb hold that enables the user to comfortably eject and control the position of the tampon.").

11

### D.    The Court's Claim Construction Does Not Bar Playtex's Doctrine Of Equivalents Claim.

Even if an accused device does not literally infringe a patent claim, it may nonetheless infringe under the doctrine of equivalents. *See Overhead Door Corp. v. Chamberlain Group, Inc.*, 194 F.3d 1261, 1269 (Fed. Cir. 1999). "An element in the accused product is equivalent to a claim element if the differences between the two are 'insubstantial' to one of ordinary skill in the art." *Id.* The "function-way-result" test is often used to identify an equivalent. *Id.* at 1270. Under this test, an element in the accused device is equivalent to the claim element if it "performs substantially the same function in substantially the same way to obtain the same result." *Id.*

P&G's challenge to Playtex's doctrine of equivalents claim fails because it is also based on the false premise that the Court's construction of "substantially flattened surfaces" excludes all curvature. S.J. Mtn. pp. 14-19. As explained above, the Court's construction allows for the slight curvature falling within a "geometric manufacturing tolerance." Therefore, contrary to P&G's assertion, Playtex's doctrine of equivalents claim does not cover a structure excluded by the Court's claim construction. *See id.* at pp. 14-15.

P&G's motion must also be denied because there is strong factual evidence supporting Playtex's doctrine of equivalents claim. For example, as explained in Playtex's Opposition to P&G's Motion To Phase Trial, which Playtex incorporates herein by reference, the differences between Tampax Pearl's slightly curved finger grip and a flat finger grip are "insubstantial." *See* Dkt. 76, pp. 2-6. For the Court's convenience, Playtex provides the following summary of relevant facts, which are included in more detail in Playtex's Opposition to P&G's Motion To Phase Trial: P&G originally made Tampax Pearl with a flat finger grip. *Id.* at p. 2. Upon learning of the '178 patent, P&G's internal patent counsel advised P&G to obtain a

license from Playtex under the '178 patent. *Id.* at p. 3. P&G disregarded this advice and instead of obtaining a license from Playtex, P&G changed the design of Tampax Pearl by adding a small amount of curvature to the finger grip. *Id.* P&G considered this to be a "minor" change to the part design. *Id.* The change was so insubstantial that, when P&G mistakenly failed to properly implement the new design, the mistake went undetected by P&G's engineers for almost a year, during which millions of flatter grip applicators were made. *Id.* at p. 4. P&G's lawyers eventually detected the mistake and ordered the engineers to add additional curvature – though imperceptible to P&G's engineers – to the finger grip. *Id.*

Tampax Pearl also infringes under the "function-way-result" test. The function of the "substantially flattened surfaces" and "transitional section" of the '178 patent is to reduce involuntary rotation, slippage or play. *See* Stabinsky Decl. Exhs. J at pp. 5, Exh. K at p. 6. Tampax Pearl's elongated, slightly curved finger grip in cooperation with its angled shoulders performs substantially the same function. *Id.* Exh. J at p. 6, Exh. K at p.6. The way the '178 patent achieves this result is by increasing the surface contact area between the user's fingers and the applicator, as compared to a conventional cylindrical tube. *Id.* Exh. J at p. 6, Exh. K at p. 6. Tampax Pearl's slightly convex finger grip in cooperation with its angled shoulders also provides greater surface contact area than a conventional cylindrical tube with no shoulders. *Id.* Exh. J at p. 6, Exh. K at p.6. The result achieved by the '178 patent is to provide the user with an enhanced feeling of security, comfort and control during insertion and ejection of the tampon. Tampax Pearl's finger grip also provides the user with these benefits. *Id.* Exh. D, Exh. G, Exh. J at p. 6, Exh. K at p. 6. Thus, even if the jury were to find that Tampax Pearl does not lie strictly within a flatness manufacturing tolerance, the jury could nonetheless find infringement under the doctrine of equivalents. P&G's motion for summary judgment must be denied.

### E. Playtex's Experts' Infringement Opinions Are Consistent With The Court's Claim Construction.

Similarly, P&G's Motion To Exclude The Opinions In Plaintiff's Supplemental Expert Reports ("Mtn. To Exclude") is also based on the false premise that the Court's claim construction excludes all curvature. *See* Mtn. To Exclude (Dkt. 94) at p. 1. However, as explained above, the Court's construction – "two opposite surfaces that are flat within a geometric, manufacturing tolerance" – allows for small amounts of curvature that fall within a flatness manufacturing tolerance. Playtex's experts strictly followed the letter of the Court's construction, and they applied the industry standard SPI manufacturing tolerance for flat surfaces to Tampax Pearl. *See* S.J. Mtn. Exh. E at pp. 2-3, Exh. D at pp. 1-2. They found that a significant portion of Tampax Pearl's finger grip comprises a "flat" surface for manufacturing purposes (*i.e.,* that it lies within the flatness tolerance zone). Therefore, they correctly concluded that Tampax Pearl is a device with "two opposite surfaces that are flat within a geometric, manufacturing tolerance." *See Id.* Exh. E at p. 3, Exh. D at p. 2. Thus, contrary to P&G's assertion, Playtex's experts have not used an "improper claim construction." *See* Mtn. To Exclude at p.1.

Nor does P&G's assertion that, in their supplemental expert reports, Playtex's experts are using the same claim construction set forth in their earlier reports, have any merit. *Id.* at p. 4. In their initial expert reports prior to the Court's claim construction, Playtex's experts did not analyze whether Tampax Pearl's finger grip was flat "within a geometric, manufacturing tolerance." *See* Stabinsky Decl. Exhs E, F. After the Court issued its claim construction, Playtex's experts supplemented their reports by conducting a completely different infringement analysis in order to determine whether any portion of Tampax Pearl's finger grip fell within the "geometric, manufacturing tolerance" specified by the Court. *See* S.J. Mtn. Exhs. E, D. That

P&G successfully obtained a claim construction that it now doesn't like is not grounds upon which to challenge Playtex's experts' infringement opinions – which are entirely consistent with the Court's claim construction.

## III.   CONCLUSION

Based on the foregoing discussion, Playtex respectfully requests that Defendants' (A) Motion For Summary Judgment Of Non-Infringement Based On Markman Ruling, and (B) Motion To Exclude The Opinions In Plaintiff's Supplemental Expert Reports be denied.

Dated:  October 3, 2003

Respectfully submitted,


By: s/Allon Stabinsky
   Matthew B. Lehr (*pro hac vice*)
   Allon Stabinsky (*pro hac vice*)
   Attorneys for Plaintiff
   LATHAM & WATKINS LLP
   135 Commonwealth Drive
   Menlo Park, CA 94025
   Telephone: (650) 328-4600
   Facsimile: (650) 463-2600
   E-mail: allon.stabinsky@lw.com

   Robert J. Gunther, Jr. (*pro hac vice*)
   LATHAM & WATKINS LLP
   885 Third Avenue, Suite 1000
   New York, New York 10022-4802
   Telephone: (212) 906-1200
   Facsimile: (212) 751-4864

   Paul B. Martins, Esq. (0007623)
   HELMER, MARTINS & MORGAN CO., L.P.A.
   1900 Fourth & Walnut Centre
   105 East Fourth Street
   Cincinnati, OH 45202
   Telephone:   (513) 421-2400
   Facsimile:   (513) 421-7902

SV\390771.1