EXHIBIT I



Professional Indexes & Files, Inc. 800-422-9191 Recycled Paper

51 U.S.P.Q.2d 1752 — Page 1
1999 WL 696007 (E.D.Mich.)
(Cite as: 51 U.S.P.Q.2d 1752)

C

Mossman
v.
Broderbund Software Inc.

U.S. District Court Eastern District of Michigan

No. 98-71244-DT

Decided May 18, 1999

United States Patents Quarterly Headnotes

**PATENTS**
**[1] Patent construction -- Claims -- Defining terms (Section 125.1305)**
Claimed method of teaching reading using video and sound recordings, in which "temporary highlighting" of words pronounced by recording progresses through "visual display," does not require use of "page like" display, since patent's reference to use of visual display generated on viewing screen in format similar to printed page of book is description of preferred embodiment, which is merely illustrative of invention and does not limit claims.

**PATENTS**
**[2] Patentability/Validity -- Construction of claims (Section 115.03)**
**Patentability/Validity -- Anticipation -- Identity of elements (Section 115.0704)**
Use of animation in prior art children's television program segment does not serve to distinguish that reference from claimed method of teaching reading using video and sound recordings, since independent claim at issue, written in Jepson form, uses word "comprises" to describe both prior art portion of method and claimed improvement, since "comprises" means that recited elements are only part of device, and since prior art reference that includes all elements of claim therefore anticipates claim even if it uses additional elements.

**PATENTS**
**[3] Patentability/Validity -- Specification -- Claim adequacy (Section 115.1109)**
Claim of patent for method of teaching reading using video and sound recordings, in which temporary highlighting of words pronounced by recording progresses through visual display so that reader is able to "readily follow" as such highlighting progresses, is invalid for indefiniteness, since patent does not mention any criteria for determining whether display can be "readily followed," or define term "readily follow," and since use of term does not distinguish claimed highlighting technique from prior art reference, in that reader can just as "readily follow" reading in reference as one could by following teaching of patent.

**PATENTS**
**[4] Practice and procedure in Patent and Trademark Office -- Re-examination -- Prior art considered (Section 110.1505)**
U.S. Patent and Trademark Office, in refusing to re-examine patent in suit in light of newly submitted prior art, did not consider anticipation argument raised by defendants in their motion for summary judgment, since PTO specifically stated that it expressed no opinion as to whether any videotape submitted by patentee would anticipate any claim of patent for method of teaching reading using video and sound recordings.

**PATENTS**
**Particular patents -- Electrical -- Reading instruction**
4,636,173, Mossman, method for teaching reading, invalid.

*1752 Action by Robert Mossman against Broderbund Software Inc. and Random House Inc. for patent infringement. On defendants' motion for summary judgment of invalidity, plaintiff's motion for summary judgment, plaintiff's motion to strike, defendants' motion for partial summary adjudication of claim construction and summary judgment of non-infringement, and defendants' motion for summary judgment of invalidity and fraud on patent office. Summary judgment of invalidity granted.

Allen M. Krass, Douglas W. Sprinkle, and Julie A. Greenberg, of Gifford, Krass, Groh, Sprinkle, Patmore, Anderson & Citkowski, Birmingham, Mich.; R. Terrance Rader and Glenn E. Forbis, of Rader, Fishman & Grauer, Bloomfield Hills, Mich., for plaintiff.

COPR. © 2003 The Bureau of National Affairs, Inc.

A. Michael Palizzi, of Miller, Canfield, Paddock & Stone, Detroit, Mich., for defendants.

Zatkoff, J.

## I. INTRODUCTION

This matter is before the Court on the following motions: (1) Defendants' Motion for Summary Judgment For Invalidity; (2) Plaintiff's Motion for Summary Judgment; *1753 (3) Plaintiff's Motion to Strike; (4) Defendants' Motion for Summary Judgment of Invalidity for Failure to Disclose Best Mode; (5) Defendants' Motion for Partial Summary Adjudication of Claim Construction and Summary Judgment of Non-Infringement; and (6) Defendants' Motion for Summary Judgment of Invalidity and Fraud on the Patent Office. All of the motions have been fully briefed. The facts and legal arguments are adequately presented in the briefs submitted, and the decisional process will not be aided by oral arguments. Therefore, pursuant to E.D. Mich. Local R. 7.1(e)(2), it is hereby ORDERED that the motion be resolved on the briefs submitted. For the reasons that follow, defendants' Motion for Summary Judgment for Invalidity is GRANTED.

## II. BACKGROUND

This patent infringement case arises from a dispute over a *method of teaching children how to read* using video presentations. Plaintiff Robert Mossman (hereinafter "Mossman" or "plaintiff") is the named inventor and owner of U.S. Patent 4,636,173 (hereinafter "the '173 patent"). In particular, the '173 patent involves a method of teaching children in which words or syllables are displayed on a video screen. Along with the pronunciation of the displayed syllable or work, the corresponding letters are temporarily highlighted by a change in appearance.

Mossman filed suit against defendants, claiming that series of CD-ROM interactive animated stories called Living Books, produced by defendant Broderbound and formerly produced by a joint venture between Broderbound and Random House, infringes his patent. Defendants deny that the Living Books infringe plaintiff's patent and claim that plaintiff's patent is invalid.

## III. SUMMARY JUDGMENT STANDARD

A motion for summary judgment under Fed. R. Civ. P. 56(b) is appropriate when the Plaintiff fails to state a claim upon which relief may be granted. Summary judgment is appropriate only if the answers to interrogatories, depositions, admissions and pleadings combined with the affidavits in support show that no genuine issue as to any material fact remains and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A genuine issue of material fact exists when there is "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 105 S.Ct. 2505, 2511 (1986) (citations omitted). In application of this summary judgment standard, the Court must view all materials supplied, including all pleadings, in the light most favorable to the non-moving party. Id. 106. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-50 (citations omitted).

The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that establish the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 2552-53. The nonmoving party must do more than show that there is some metaphysical doubt as to the material facts. It must present significant probative evidence in support of its opposition to the motion for summary judgment in order to defeat the motion for summary judgment. *Moore v. Philip Morris Co.,* 8 F.3d 335, 339-40 (6th Cir. 1993).

## IV. OPINION

### A. CLAIM CONSTRUCTION

Before this Court determines if any or all of the claims of patent '173 are anticipated by the prior art references cited by the Defendants, this Court must first analyze each claim of the patent to determine what the claims cover. Claim construction is a question of law and strictly for this Court to determine. *See Markman v. Westview Instruments Corp.,* 517 U.S. 370 [ 38 USPQ2d 1461 ] (1996).

COPR. © 2003 The Bureau of National Affairs, Inc.

In analyzing the patent claim, this Court must first analyze the claims themselves, the patent's specification, and the prosecution history. *Vitronics Corp. v. Conceptronics, Inc.*, 90 F.3d 1576, 1582 [ 39 USPQ2d 1573 ] (Fed. Cir. 1996). The words of the patent are generally given their ordinary and customary meaning. *Vitronics*, 90 F.3d at 1582. However, the patentee may choose to be his own lexicographer and use terms in a manner other than their ordinary meaning, as long as the special definition of the term is clearly stated in the patent specification or *1754 file history. *Hoechst Celanese Corp. v. BP Chems. Ltd.*, 78 F.3d 1575, 1578 [ 38 USPQ2d 1126 ] (Fed. Cir. 1996).

Next, the Court must review the specification to ensure that the terms used in the patent claim are used consistently with the patent specification. "Claims must be read in light of the specification, of which they are a part." *Markman*, 52 F.3d at 979. However, "while it is true that claims are to be interpreted in light of the specification. . . it does not follow that limitations from the specification may be read into the claims."*Sjolund v. Musland*, 847 F.2d 1573, 1581 [ 6 USPQ2d 2020 ] (Fed. Cir. 1988).

Third, the Court must examine the prosecution history of the patent in the event that the first two steps are not dispositive of the claim construction. In this case, there is no reason to discuss the prosecution history as there was none.

Admissions by the party inventor may also be relevant. *See Moll v. Northern Telecom, Inc.* 1996 WL 11355, *3 (E.D. Pa. 1996) (construing patent based on plaintiff inventor's testimony). In some situations, for example a highly technical field, a court may rely upon extrinsic evidence to give proper meaning to the words contained in the patent claim. However, the Federal Circuit made it clear in *Vitronics* that, with few exceptions, it is improper to rely upon extrinsic evidence. In most situations, an analysis of the intrinsic evidence alone will resolve any ambiguity in a disputed claim term. *Vitronics*, 90 F.3d at 1582.

Claim 1 of the '173 patent states:

1. In a method for teaching reading of the type characterized by a combined video and oral recording which comprises (1) a visual display of information in the form of alphabetic characters arranged either individually or in groups which are combined to represent words and (2) an audible soundtrack which records spoken pronunciation of such displayed information, the improvement which comprises the steps of:

synchronizing the recorded audible pronunciation of each syllable or work with a temporary recorded visible highlighting of such syllable or word as it is pronounced, the highlighting being in the form of a temporary change in the visual characteristics of the pronounced syllable or word,

whereby the viewer can readily follow the reading of the visual display and correlate the sound of the displayed syllable or word with its written representation merely by following the visible highlighting as such highlighting progresses through the visual display.

Therefore, by clear language of claim 1 of the '173 patent, in order for the claim to be anticipated, the prior art must be both 1) a method for teaching reading, and 2) a combined video and oral recording. This Court will address additional requirements and specifications below.

*1. JEPSON FORM*

The '173 patent has four claims. Claim 1 is the only independent claim and claims 2-4 depend on claim 1. Therefore, both parties agree that claims 2-4 incorporate all of the requirements of claim 1, as well as the particular elements set forth in each claim. Claim 1 is in the Jepson form. A Jepson claim is one that begins with a preamble that recites a public domain method, apparatus or combination, and continues with a transition that states "wherein the improvement comprises. . ." See Ex Parte Jepson, 243 O.G. 525 (Ass't Comm'r of Pat. 1917); 37 C.F.R. Section 1.75. The terms in both the preamble describing the prior art and those elements constituting the improvement are substantive claim limitations. 37 C.F.R. Section 1.75(e).

In this case, the claimed method for teaching reading that was previously known consisted of a "combined video and oral recording" including the video display of letters, alone or grouped to form words, and a soundtrack with the spoken pronunciation of the letters and words. Stated differently, words are displayed on the screen, and those words are read on the recorded audible soundtrack.

*2. SYNCHRONIZING*

Mossman's improvement consists of synchronizing

COPR. © 2003 The Bureau of National Affairs, Inc.

51 U.S.P.Q.2d 1752  
1999 WL 696007 (E.D.Mich.)  
(Cite as: 51 U.S.P.Q.2d 1752)

Page 4

a temporary visual highlighting of the displayed words or syllables with the recorded soundtrack. Synchronizing is not defined in the claim or in the specifications. Therefore, the word synchronizing should be given its ordinary and customary meaning. *Vitronics, 90 F.3d at 1582.* Synchronizing is defined in the field of motion pictures and television as "to arrange (sound) so as to coincide with the action of a scene . . ." Random House College Dictionary, (Rev. ed. 1975). Therefore, as to claim 1, synchronizing is defined as the temporary visual highlighting of the displayed words or syllables so as to coincide with the audible soundtrack.

### 3. EACH SYLLABLE OR WORD

According to the '173 patent, each syllable or word is highlighted and the highlighting is to be synchronized with the pronunciation of the displayed word or syllable. Therefore, each of the syllables or words displayed must be highlighted individually as that word or syllable is spoken.

### *1755 4. TEMPORARY HIGHLIGHTING

Moreover, the synchronized highlighting must be temporary, meaning that after the word or syllable is spoken (and therefore highlighted), it must return to the original state. The temporary highlighting is discussed in the column 2, lines 17-23 of the '173 patent.

As the pronounced syllable or word is passed, the temporary highlighting disappears so that the intensity or boldness or color thereof returns to the normal state. In this manner, even after a momentary lapse of attention by the student, the student will instantly be redirected to the portion of the visual display which is being pronounced on the soundtrack.

The '173 patent clarifies that the temporary highlighting of the words as they are pronounced distinguished the patent from the prior art "bouncing ball" videos discussed in the specification at column 1, lines 15-21.

### 5. VISUAL DISPLAY

The patent also specifies that the temporary visual highlighting must progress through the visual display. The '173 patent claim defines "visual display" as the "alphabetic characters arranged either individually or in groups which are combined to represent words." The patent specification further elaborates on the definition as "a format similar to the pages of a book. That is, the format preferably should have a conventional number of printed words per line and lines per page, giving due consideration to the age and attention span of the students." The description also permits the use of "interspersed pictures that are related to the subject of the printed text." (Defendant's Ex. 1). Therefore, the visual display should, but need not resemble the pages of a book. *Sjolund, 847 F.2d at 1581* (while it is true that claims are to be interpreted in light of the specification, it does not follow that limitations from the specification may be read into the claims).

### 6. "READILY FOLLOW" AS SUCH HIGHLIGHTING "PROGRESSES"

The highlighting on the visual display must allow the viewer to readily follow the synchronized highlighting and audible pronunciation of the word or syllable "merely by following the visible highlighting as such highlighting progresses through the visual display." The '173 patent describes a highlighting method in which "the eye of the student is encouraged to progress across the printed message." The '173 patent describes the term "progression" in the specifications. "In this manner, even after a momentary lapse of attention by the student, the student will be redirected to the portion of the visual display which is being pronounced on the soundtrack." As defined, the term "progression" does not adequately specify how the words are to "progress" through the visual display. Therefore, extrinsic evidence and party admissions may be admitted to clarify an ambiguity. Mossman testified in depositions that the term "progress through the visual display" means "to move from left to right." (Mossman Dep. at 203:13-15).

### B. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT FOR INVALIDITY

Plaintiff filed this lawsuit claiming that two reading aids produced by the defendants infringe on his patent. Plaintiff therefore filed suit against Defendants, Broderbund Software, Inc. and Random House, Inc., for patent infringement. Defendants filed a motion for summary judgment in which they claimed that the '173 patent is invalid on two separate grounds. First, the patent at issue is invalid under 35 U.S.C. Section 102(a) because prior art existed that met each element of the claims asserted in the patent. Second, Defendants argue that the '173 patent is invalid for indefiniteness.

COPR. © 2003 The Bureau of National Affairs, Inc.

The Patent Act of 1952 sets forth the requirements of patentability. The Act states in pertinent part:

A person shall be entitled to a patent unless:

(a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for a patent.

35 U.S.C. Section 102(a).

In addition the Act provides for a presumption of patentability with the onus on the party opposing patentability to show by clear and convincing evidence that the invention is not patentable. 35 U.S.C. Section 282. The Federal Circuit has recognize that courts should defer to the expertise of the Patent Trademark Office (hereinafter "PTO") when the PTO has examined the same prior art raised in support of an invalidity claim. *American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1359 [ 220 USPQ 763 ] (Fed. Cir. 1984). However, the presumption is a procedural device and not substantive law. *See DMI, Inc. v. Deere & Co.*, 802 F.2d 421, 427 [ 231 USPQ 276 ] (Fed. Cir. 1986). As such, "the examiner's decision, on an original or reissue examination, is never binding on the Court."*Fromson v. Advance Offset Plate,* *1756*Inc., 755 F.2d 1549, 1555 [ 225 USPQ 26 ] (Fed. Cir. 1985).

Both parties agree that, in order for a claim to be anticipated, and therefore invalid under 35 U.S.C. Section 102, a prior art reference must contain each and every element of the claim. *Celeritas Technology, Inc. v. Rockwell Int'l Corp.*, 150 F.3d 1354, 1361 [ 47 USPQ2d 1516 ] (Fed. Cir. 1998). Both parties also agree that the '173 patent contains essentially the following claims. First, the patent claim in this case begins with a preamble which cites a public domain method for teaching reading consisting of a combined video and oral recording. The patent then goes on to state that the claimed improvement to this method "comprises" the following elements: 1) "synchronizing", 2) "each syllable or word", 3) with "temporary highlighting", 4) which progresses through the "visual display", 5) so that the render is able to "readily follow" as such highlighting progresses. In addition to these elements, Plaintiff argues that as written and intended by the author, the visual display element can only be satisfied by a "page-like display."

Defendants maintain that the '173 patent is anticipated by several prior art references which contain each and every claim of the '173 patent. First, the defendant argues that patent claim is anticipated by several segments on the children's television program, *The Electric Company*. For example, several years before the plaintiff even claims to have invented his method, the segment "Dear Louisa, will you marry me?" was created and broadcast by *The Electric Company*.

*1. "SYNCHRONIZING"*

In order for this segment to have anticipated the '173 patent claim, it must contain each and every element of the claim. The first element of the claim is that it covers a method of teaching reading using video and oral recordings. *The Electric Company's* segment "Dear Louisa" satisfies the first element as it provides a method to teach children how to read. (Chall Decl. Para.11). However, Plaintiff argues, without further explanation, that a television broadcast is not a "combined video and oral recording." Plaintiff's argument is without merit. The Electric Company and the episodes in question were aired on multiple occasions. (Schuman Decl. Paragraphs 3,4). Thus, the segments could not have been broadcast repeatedly without having been recorded. Further, the patent itself indicates that television and motion pictures were within the media contemplated for use of the alleged invention. Therefore, the "Dear Louisa" segment has satisfied the first element and is a method of teaching reading using video and oral recording.

*2. "EACH SYLLABLE OR WORD"*

The second element is that as words are pronounced, each word is highlighted by an increase in size and intensity. In the "Dear Louisa" segment the words "Dear Louisa, will you marry me?" are displayed on the video screen. As the words are pronounced, each is highlighted by an increase in size and intensity. Therefore the "synchronizing" and "each syllable or word" elements of the patent claim are met.

*3. "TEMPORARY HIGHLIGHTING"*

The third element is that the highlighting must be temporary, in that after each word is highlighted and pronounced, it returns to its original condition as the highlighting progresses. There is no dispute that the highlighting in the "Dear Louisa" segment is temporary in that, after each word is highlighted and pronounced, it returns to its original condition as the

highlighting progresses through the visual display. Therefore, the element of temporary highlighting is met.

*4. PROGRESSES THROUGH THE "VISUAL DISPLAY"*

The fourth element is that the temporary highlighting progress through the visual display. Plaintiff argues that the term "visual display" requires a "page-like" display and that the "Dear Louisa" segment does not use a "page-like" display. Defendants counter that a page-like display is not required, but is instead a part of the preferred embodiment. The disputed portion of the patent states:

Preferably, a visual display is generated on the viewing screen in a format similar to the printed page of a book. That is, the format preferably should have a conventional number of printed words per line and lines per page, giving due consideration to the age and attention span of the students.

[1] Clearly, the quoted portion of the '173 patent is a preferred embodiment of the patent and not part of the claim. Therefore, although the "visual display"*should* appear like the pages of the book, patent '173 does not require it. See *Construction Technology, Inc. v. Cybernation, Inc.*, 965 F.Supp. 416, 432 (S.D.N.Y. 1997) (the preferred embodiment is merely illustrative of the invention and does not limit the claim). The claim for patent '173 defines the only requirement for a visual display as "information in the form of alphabetic characters arranged either individually or in groups which are combined to represent words." The Dear Louisa segment meets the definition of a visual display, *1757 as the words "Dear Louisa, will you marry me?" are displayed on the video screen. Therefore, the "visual display" element is met.

*5. "READILY FOLLOW"*

The final element is that the segment must allow the reader to "readily follow" as the highlighting progresses. The final claim reads, "whereby the viewer can readily follow the reading of the visual display and correlate the sound of the displayed syllable or word with its written representation merely by following the visible highlighting as such highlighting progresses through the visual display." Plaintiff maintains that the animation or movement on the screen during the "Dear Louisa" segment distracts the eyes of the viewer, thereby preventing the viewer from being able to "readily follow" as the highlighting of words progresses. Plaintiff therefore, argues that the "Dear Louisa" segment fails to meet the final element of being able to "readily follow" as the highlighting progresses. The defendants claim that the final claim is invalid for indefiniteness.

Patent law requires each patent specification to conclude with one or more claims "particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." 35 U.S.C. Section 112 Para.2. Despite Plaintiff's claim to the contrary, the issue of indefiniteness is a question of law and is properly resolved at the summary judgment stage. See *Miles Lab., Inc. v. Shandon, Inc.*, 997 F.2d 870, 874 [ 27 USPQ2d 1123 ] (Fed. Cir. 1993) (citing *Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565, 1576, 1 USPQ2d 1081, 1088 (Fed. Cir. 1986). The "definiteness" requirement means that a claim must have a clear and definite meaning when construed in light of the complete patent document. *Standard Oil Co. v. American Cyanamid Co.*, 774 F.2d 448, 452 [ 227 USPQ 293 ] (Fed. Cir. 1985). A claim complies with Section 112 Para.2 if one of ordinary skill in the art would understand what is being claimed when the claim is read in light of the patent specification. *Seattle Box Co. v. Industrial Crating & Packing, Inc.*, 731 F.2d 818, 826 [ 221 USPQ 568 ] (Fed. Cir. 1984), *appeal after remand*, 756 F.2d 1574 [ 225 USPQ 357 ] (Fed. Cir. 1985). If the claims read in light of the specification reasonably apprize those skilled in the art of the scope of the invention, section 112 demands no more. *Hybritech*, 802 F.2d at 1385. The degree of precision necessary for adequate claims is a function of the nature of the subject matter. *Id.* Indefiniteness is construed in light of the prior art. *Standard Oil*, 774 F.2d at 453 (patent is invalid for indefiniteness if it does not distinguish claimed invention from close prior art); *Amgen, Inc. v. Chugai Pharmaceutical Co., Ltd.*, 927 F.2d 1200, 1218 [ 18 USPQ2d 1016 ] (Fed. Cir. 199), cert. denied, 502 U.S. 856 (1991). Further, " [w]hen the meaning of the claim is in doubt, especially when, as in the case here, there is close prior art, they are properly declared invalid. "*Amgen*, 927 F.2d at 1218 (invalidating as indefinite a claim using the term "at least about 160,000").

According to Patent '173, paragraph 2 of claim 1 requires that the synchronized highlighting and recorded pronunciation allow the viewers to "readily follow" the reading of the visual display and and related audio. (Defendants' Ex. 1). Patent '173 does not mention or even attempt to establish an criteria

COPR. © 2003 The Bureau of National Affairs, Inc.

51 U.S.P.Q.2d 1752  
1999 WL 696007 (E.D.Mich.)  
**(Cite as: 51 U.S.P.Q.2d 1752)**

Page 7

for determining whether a display can be "readily followed." Moreover, the term "readily follow" is not defined and has no particular meaning in the '173 patent claims."

In this case, as discussed above, the prior art is substantially identical to the claims in Patent '173. Further, Plaintiff's patent provides no insight as to how one of ordinary skill in the art would identify a segment in which the viewer could "readily follow" the correlation of the display and the pronunciation of the word, let along distinguish it from the prior art.

[2] Plaintiff claims that the animation in the "Dear Louisa" segment distinguishes his patent claim from the prior art. This Court disagrees. Patent '173 uses the word "comprises" to describe both the prior art portion of his method and his improvement. The prior art comprises a visual display of letters and an audible soundtrack of the pronunciation of the displayed letters. Mossman's improvement comprises the steps of synchronizing the recorded pronunciation of each word or syllable with a temporary visual highlighting of each syllable or word as it is pronounced. (Greenberg Decl. Ex. 1 at 2:39-51.

It is well settled in patent law that the word "compromises" means that the recited elements are only a part of the device. See Genentech, Inc. v Chrion Corp., 112 F.3d 495, 501 [ 42 USPQ2d 1608 ] (Fed. Cir. 1997). Therefore, to be covered by the '173 patent claims, the prior art reference must simply include all the elements listed above. Id. If these elements are included, it does not matter if the method includes other additional elements. In fact, plaintiff made videos incorporating all of the elements outlined in the patent claim, but also included the additional *1758 elements of music and animation. Although these videos used elements not included in the patent claim, plaintiff did mark these videos with his patent number. Therefore, if all of the elements discussed above are included in the prior art reference, the claim is anticipated even if additional elements are used in the reference.

[3] In *The Electric Company* example discussed extensively above, the displayed syllables or words are highlighted and the highlighting is synchronized with the recorded pronunciation on the soundtrack as the highlighting progresses through the screen. The reader can just as readily follow the reading in *The Electric Company* as one could by following the teaching of the patent. Plaintiff's argument that the animation or movement on the screen during *The Electric Company* segment distracts the eyes of the viewer, thereby preventing the viewer from being able to "readily follow" as the highlighting of words progresses is unpersuasive. The patent does not mention the lack of animation or movement, nor does it require that the product be without animation. In fact, the preferred embodiment encourages the use of interspersed pictures to enhance the student's reading experience. Because the term "readily follow" does not distinguish the highlighting technique in the prior art from that described in the '173 patent, one skilled in the art could not know what highlighting technique would be infringing. Morton International, Inc. v. Cardinal Chemical Co. 5 F.3d 1464, 1470 [ 28 USPQ2d 1190 ] (Fed. Cir. 1993). Claim 1 of the '173 patent is herefore fatally indefinite. Because claim 1 fails, so does claims 2-4 which depend on claim 1. Therefore, defendant's "Motion For Summary Judgment For Invalidity" is GRANTED.

### C. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

[4] Also before the Court is Plaintiff's motion for summary judgment. Defendants responded and Plaintiff replied. After Defendants filed their motion for summary judgment for invalidity discussed above, Mossman argued for a stay, asserting that he would resubmit the collection of prior art to the PTO for reexamination. The PTO considered the materials and issued a decision denying Plaintiff's request for reexamination and prior art cited therein." (Plaintiff's Ex. A). The PTO reasoned that neither the videotapes submitted nor the original television programs constitute printed publications within the meaning of 35 U.S.C. 102(b) [FN1] and therefore are not usable as references. However, the PRO, in declining to reexamine the patent in light of the newly submitted prior art, specifically stated that "no opinion is expressed as to whether any individual videotape would anticipate any claim." (Plaintiff's Ex. A). Therefore, by refusing the reexamine the patent, the PTO did not consider the anticipation argument that defendants raised in their motion for summary judgment for invalidity. Accordingly, Plaintiff's motion for summary judgment is DENIED.

### D. PLAINTIFF'S MOTION TO STRIKE

Plaintiff filed a motion to strike the defendants'

COPR. © 2003 The Bureau of National Affairs, Inc.

51 U.S.P.Q.2d 1752  
1999 WL 696007 (E.D.Mich.)  
**(Cite as: 51 U.S.P.Q.2d 1752)**

Page 8

supplemental memorandum in support of defendants' motion for summary judgment for invalidity. In support of their motion for summary judgment, defendants filed a supplemental brief in which they discuss recently discover prior art and ask this Court to consider the art with their motion. The supplemental brief describes a copy of a segment produced by Derek Lamb and aired on *The Electric Company* entitled "The Best Baked Beans" in 1975. The plaintiffs' claim that "The Best Baked Beans" is not related to anything referenced in the defendants' motion for summary judgment for invalidity. Therefore, plaintiff requests that this Court strike the supplemental brief as time-barred because the defendants filed it well after the summary judgment cut-off date.

This Court disagrees. Because it is probative and relevant, the supplemental memorandum which provides the Court with a copy of "The Best Baked Beans" and Derek Lamb's accompanying declaration is appropriately considered in connection with the defendants' summary judgment motion. First, the legal analysis applicable to "The Best Baked Beans" is similar, if not identical, to the "Dear Louisa" segment. Second, the evidence was unknown to defendants until after defendants retained Mr. Lamb as an expert. Third, defendants produced the information immediately upon discovery. *1759 Therefore, plaintiff's motion to strike is DENIED.

### E. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY FOR FAILURE TO DISCLOSE BEST MODE

Because this Court held that the '173 patent is invalid, the Defendants' motion for summary judgment of invalidity for failure to disclose best mode is DENIED as MOOT.

### F. DEFENDANTS' MOTION FOR PARTIAL SUMMARY ADJUDICATION OF CLAIM CONSTRUCTION AND SUMMARY JUDGMENT OF NON-INFRINGEMENT

Because this Court held that the '173 patent is invalid, the Defendants' motions for partial adjudication of claim construction and summary judgment of non-infringement is DENIED as MOOT. This Court did, however, issue a claim construction in Section IV.A of this opinion as required by *Markman v. Westview Instruments Corp.*, 517 U.S. 370 [ 38 USPQ2d 1461 ] (1996).

### G. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF INVALIDITY AND FRAUD ON THE PATENT OFFICE

Because this Court held that the '173 patent is invalid, the Defendants' motion for summary judgment of invalidity and fraud on the patent office is DENIED as MOOT.

### V. CONCLUSION

Accordingly, for the reasons stated above, IT IS HEREBY ORDERED that the defendants' for summary judgment for invalidity is GRANTED.

IT IS FURTHER ORDERED that the plaintiff's motion for summary judgment is DENIED.

IT IS FURTHER ORDERED that the Plaintiff's Motion to Strike is DENIED.

IT IS FURTHER ORDERED that the following motions are DENIED as MOOT (1) Defendants' Motion for Summary Judgment of Invalidity For Failure to Disclose Best Mode; (2) Defendants' Motion for Partial Summary Adjudication of Claim Construction and Summary Judgment of Non-Infringement; and (3) Defendants Motion for Summary Judgment of Invalidity and Fraud on the Patent Office.

IT IS SO ORDERED.

FN1 Section 102(b) provides in relevant part:

A person shall be entitled to a patent unless:

(b) the invention was patented or described in a printed publication in this or a foreign country or in a public use or on sale in this county, more than one year prior to the date of the application for patent in the United States . . .

E.D.Mich.

51 U.S.P.Q.2d 1752

COPR. © 2003 The Bureau of National Affairs, Inc.

51 U.S.P.Q.2d 1752  
1999 WL 696007 (E.D.Mich.)  
**(Cite as: 51 U.S.P.Q.2d 1752)**

Page 9

END OF DOCUMENT

COPR. © 2003 The Bureau of National Affairs, Inc.