EXHIBIT J


Professional Indexes & Files, Inc. 800-422-9191 Recycled Paper

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF OHIO

WESTERN DIVISION (DAYTON)

| | |
|---|---|
| PLAYTEX PRODUCTS, INC., a Delaware corporation,<br><br>    Plaintiff,<br><br>v.<br><br>THE PROCTOR & GAMBLE DISTRIBUTING COMPANY, an Ohio corporation, and THE PROCTOR & GAMBLE COMPANY, an Ohio corporation,<br><br>    Defendants, | CASE NO. C-1-02-391<br><br>(Hon. Thomas M. Rose)<br><br>REBUTTAL EXPERT REPORT OF MARIO A. TURCHI |

DEFENDANT'S EXHIBIT 40  7-2-03

## I. OVERVIEW

I have been asked by Playtex Products, Inc. ("Playtex") to provide my opinion in response to the expert report of James Moller, Ph.D., P.E. submitted by Procter & Gamble ("P&G") in this matter with respect to the issue of infringement of U.S. Patent No. 4,536,178 (the "'178 patent"). I previously submitted a report on October 30, 2002 in which I set forth my opinion that the P&G Pearl Plastic tampon product infringes claims 1, 2, 3, 9 and 10 of the '178 patent. My background is set forth in my October 30, 2002 report, which is incorporated herein by reference.

I understand that in order for a patent claim to be literally "infringed," the product that is asserted to infringe on it must contain every limitation of the claim. I further understand that infringement is evaluated in two steps. The claims must first be construed, and then compared to the product. Further, it is my understanding that unless a term in the patent is a term of art in the relevant field or is defined differently or is given special meaning in the patent

NY\740753.2

specification or prosecution history, it should be given its ordinary meaning. Should the Court construe the meaning of the claims differently, I reserve the right to amend or supplement this rebuttal report.

## II. SUMMARY

In addition to the materials listed in my October 20, 2002 report, I have reviewed Dr. Moller's Expert report as well as the attachments A through M. Based on my understanding of infringement, I disagree that the Pearl Plastic applicator does not literally infringe Claims 1, 2, 3, 9, and 10 of the '178 patent. I have based my opinion on what I believe to be the proper meaning of the term "substantially flattened surfaces." As noted in my October 30, 2002 expert report, my conclusion is that the Pearl Plastic product contains all of the elements of Claim 1 of the '178 patent, including the element of "substantially flattened surfaces." In particular, the elongated, flattened shape of the rearward finger grip portion of the Pearl Plastic applicator barrel meets this claim element.

In addition, even if the claim term "substantially flattened surfaces" were to be construed, as Dr. Moller suggests, to mean "flat surfaces," in my opinion this claim term is still equivalently present in the Pearl Plastic product under the Doctrine of Equivalents, since the finger grip surfaces of the Pearl Plastic perform substantially the same function in substantially the same way to achieve substantially the same result.

## III. OPINIONS

### A. I Disagree With Dr. Moller's Opinion That "Substantially Flattened Surfaces" Should Be Interpreted To Mean "Flat Surfaces."

Dr. Moller states that "(t)he term 'substantially flattened surfaces' has no plain meaning, as the word 'substantially' is not a term of accuracy. It has no generally understood meaning to those of skill in the art." He also states that he confirmed that assessment through exhaustive review of the technical sources found in Attachments C (*Handbook of Surface*

*Metrology*), E (*Fundamentals of Tool Design*), H (*Technical Graphics Communication*), and J (other technical sources listed, including *The ASTM Dictionary of Engineering and Science*). See Moller Rep. at 3.

I disagree with Dr. Moller's opinion. The word "substantially" is not a term of art which is given any special meaning by those in the field to which the '178 patent is directed. In addition, neither the '178 patent specification nor its file history ascribes any special meaning to the word "substantially." In view of this, it is my understanding that the word substantially should be given its ordinary meaning, i.e., "generally or as "being largely but not wholly that which is specified." I note that this interpretation of "substantially" is consistent with the '178 patent specification, which interchangeably uses the words "substantially" and "generally" to describe the flattened surfaces. See e.g., Col. 2, lines 26; Col. 2, lines 37-38; Col. 3, line 55; Col. 4, line 15; Col. 4, line 33. In addition, the word "flattened" is not a term of art in the relevant field and is not given any special meaning in the '178 patent specification or its prosecution history. Accordingly, I understand that the ordinary meaning of this word should be used, i.e., "made flat or flatter." In sum, it is my opinion that the proper interpretation of the claimed "substantially flattened surfaces" are surfaces that have been made generally flat or flatter.

Dr. Moller points to two "embodiments of a thumb and finger hold" in the '178 patent. He goes on to state: "In the first, the one illustrated in the drawings, the surfaces appear flat except for protrusions that the specification terms 'ribs or treads.' Col. 4, line 18." He continues by referencing the second embodiment: "The surfaces 30 may also be provided with a concavity, or arcuate depression (not shown) configured to complement the curvature of a user's finger. Col. 4, lines 21-24." Based on these two references, he concludes that "(t)he term 'substantially flattened surfaces,' to the extent it has meaning, thus refers to a flat surface." See Moller Rep. at 4.

My understanding is that an example in the specification does not limit a claim. The '178 patent even teaches that the nature of the invention is defined in the claims: "The foregoing specification and drawings are merely illustrative of the invention and are not intended to limit the invention to the disclosed embodiment. Variations and changes which are obvious to one skilled in the art are intended to be within the scope and nature of the invention which are defined in the appended claims." Col. 5, lines 55-60.

The term "substantially flattened surfaces" in Claim 1 of the '178 patent is used to describe finger grip surfaces that can range from having some concavity, to being entirely flat, to having some convexity so long as they are generally flattened as compared, for example, to the circular barrel. This is also explained in Col. 4, lines 29-33: "The rear portion 32 is generally rectangular in cross-section to accommodate the flattened surfaces thereof. <u>Alternative cross-sectional shapes</u> may be selected as long as such cross-sections accommodate the generally flattened surfaces 30 of the rear portion 32." (emphasis added). Another reference was already given above: "The surfaces 30 may also be provided with a concavity, or arcuate depression (not shown)." Col. 4, lines 21-24.

Dr. Moller references Exhibit E as an extrinsic source he has consulted to reach his conclusion as to the meaning of "substantially flattened surfaces." See Moller Rep. at 4. However, that source discusses the meaning of the word "flatness," not "substantially flattened." Accordingly, Dr. Moller's understanding of the meaning of "flat" or "flatness" is beside the point.

In my opinion, the Pearl Plastic applicator has a cylindrical barrel, on the end of which are two generally flattened surfaces that, in conjunction with the angled shoulder surfaces, form a finger grip area.

### B. Dr. Moller's Comparison of Claim 1 To The Pearl Plastic is Incorrect Due To His Misreading of The Claim Language

For the reasons set forth above, it is my opinion that Dr. Moller has misread and misinterpreted Claim 1 of the '178 patent, specifically the term "substantially flattened surfaces." Dr. Moller's scientific definitions of "flatness" are unnecessary and seem to a large extent a purely academic exercise, since any person of ordinary skill in the art can tell that the finger grip area of the Pearl Plastic applicator is not entirely flat.

Instead, it is my opinion that the rearward portion of the Pearl Plastic applicator contains "two diametrically opposed, substantially flattened surfaces." In particular, the elongated, generally flattened shape of the rearward finger grip portion of the Pearl Plastic applicator barrel literally meets this claim element. Accordingly, it is my opinion that the Pearl Plastic product literally infringes Claims 1, 2, 3, 9 and 10 of the '178 patent.

I also understand that, even if not literally present, a claim term can be equivalently present under the Doctrine of Equivalents if an aspect of the accused device performs substantially the same function in substantially the same way to achieve substantially the same result as the claim term. I understand that infringement exists if each element of a patent claim is either literally or equivalently present in the accused device. It is my opinion that even if the claim term "substantially flattened surfaces" were interpreted, as proposed by Dr. Moller, to mean "flat surfaces," this claim term would still be equivalently present under the Doctrine of Equivalents.

The '178 patent specification shows an exemplary embodiment of the finger grip area as being flat. See e.g., Figure 1. The specification makes clear that the finger grip surface, in cooperation with the transitional section, functions to substantially reduce involuntary rotation, slippage or play as compared to conventional applicators having relatively cylindrical barrels. See '178 patent, Col. 2, lines 25-33; Col. 2, lines 63-68; Col. 5, lines 27-41. In my

NY\740753.2                                5

opinion, the elongated, slightly convex finger grip surfaces of the Pearl Plastic product perform substantially the same function. In cooperation with the angled shoulder surfaces, the Pearl Plastic finger grip surfaces substantially reduce involuntary rotation, slippage or play as compared to conventional applicators with relatively cylindrical barrels.

The way that the finger grip surfaces, in cooperation with the transitional section, achieve the foregoing function in the '178 patent is by increasing the surface contact area at the finger/applicator interface, as compared with a conventional applicator having a relatively cylindrical barrel. See '178 patent, Col. 2, lines 58-63. In my opinion, the elongated, slightly convex finger grip surfaces of the Pearl Plastic product, in cooperation with the angled shoulder surfaces, function in substantially the same way. The generally flattened, elongated shape of the finger grip surfaces permits a significantly greater surface contact area at the finger/applicator interface as compared to conventional, relatively cylindrical applicators.

Finally, the result achieved by the finger grip surfaces of the '178 patent, in cooperation with the transitional section, is to provide the user with an enhanced feeling of security, comfort and control during insertion and ejection of the tampon. '178 patent, Col. 2, lines 66-67; Col. 3, lines 1-6; Col. 5, lines 27-41. In my opinion, the finger grip surfaces of the Peal Plastic product, in cooperation with the angled shoulder surfaces, achieve substantially the same result. As noted on P&G's website marketing Pearl Plastic: "The grip's contoured shape makes it easier to hold, enabling you to position the applicator comfortably, gently and effectively."

_____
Mario A. Turchi

December 27, 2002