EXHIBIT K

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

WESTERN DIVISION (DAYTON)

PLAYTEX PRODUCTS, INC., a
Delaware corporation,

              Plaintiff,

      v.

THE PROCTOR & GAMBLE
DISTRIBUTING COMPANY, an Ohio
corporation, and THE PROCTOR &
GAMBLE COMPANY, an Ohio
corporation,

              Defendants,

CASE NO. C-1-02-391

(Hon. Thomas M. Rose)

REBUTTAL EXPERT REPORT
OF EVAN HUTCHISON

DEFENDANT'S
EXHIBIT
67
4-3-03

## I.    OVERVIEW

        On October 20, 2002, I submitted a report in which I stated my opinion that the

P&G Pearl Plastic tampon product infringes Claims 1, 2, 3, 9 and 10 of U.S. Patent No.

4,536,178 (the "'178 patent"). In this report, I respond to the expert report of James Moller

dated November 26, 2002 in which he offers the opinion that the above-stated claims of the '178

patent are not infringed by the Pearl Plastic tampon product. In addition to the materials set forth

in my October 20, 2002 report, I have also reviewed the Moller report as well as Exhibits A

through M of that report. I incorporate my October 20, 2002 report herein by reference. I

reserve the right to amend or supplement my report based on the claim construction adopted by

the Court.

## II.    SUMMARY

        The only term of the asserted '178 patent claims which Dr. Moller contends is not

present in the Pearl Plastic product is the term "substantially flattened surfaces." Dr. Moller's

opinion is predicated on the assumption that the words "substantially flattened" should be

construed to mean "flat." He then goes on to opine that because the sides of the finger grip area

of the Pearl Plastic applicator have some curvature, they are not covered by the "substantially

flattened surfaces" claim term.

I disagree with Dr. Moller's interpretation of "substantially flattened." A person

of ordinary skill in the art would give these words their ordinary meaning, i.e., generally flat or

flatter. In other words, surfaces which are not entirely flat, but instead have some curvature,

whether that curvature is convexity or concavity, are encompassed within the meaning of this

term. When "substantially flattened" is given its ordinary meaning, my opinion is that the

elongated finger grip surfaces of the Pearl Plastic applicator are "substantially flattened surfaces"

despite the fact that the elongated surfaces have some curvature to them.

Finally, even if Dr. Moller's erroneous claim interpretation were to be adopted, it

is my opinion that the finger grip surfaces of the Pearl Plastic product are equivalent to flat

surfaces, since they perform substantially the same function in substantially the same way to

achieve substantially the same result.

## III.   OPINIONS

In Section III A of his report, Dr. Moller offers his view as to the meaning of the

claim term "substantially flattened surfaces." See Moller Rep. at 3-4. In particular, he says that

"substantially" is not a term of accuracy and thus has no generally understood meaning to those

of skill in the art. He therefore concludes that the term "substantially flattened surfaces" has no

plain meaning. Id. at 3.

I disagree with Dr. Moller for the following reason. Contrary to Dr. Moller's

report, a person of ordinary skill in this art would not look to sources such as his exhibits C, E, H

or J to determine the meaning of the word "substantially." Rather, one of ordinary skill would

understand this word is not a term of art in the field and would therefore give the word its plain,

ordinary meaning, i.e., "generally." The absence of the word "substantially" from the materials

collected in Exhibits C, E, H and J of the Moller report confirms that the word is not a term of art in the field. In addition, a review of the '178 patent specification confirms this plain meaning, since the words "substantially" and "generally" are used interchangeably in the specification to describe the flattened surfaces. The following portions of the specification refer to the surfaces as "substantially flattened": Col. 2, line 26 and Col. 2, lines 37-38. In addition, the claims refer to these same surfaces as "substantially flattened." The following portions of the specification refer to these same surfaces as "generally flattened": Col. 3, line 55; Col. 4, line 15 and Col. 4, line 33.

In addition, a person or ordinary skill would understand that the word "flattened" is not a term of art in the field and would give this word its ordinary meaning, i.e., "made flat or flatter." Accordingly, when the words "substantially flattened" are read together to modify the word "surfaces", the plain meaning of the term is surfaces which have been made generally flat or flatter. This meaning is clearly broader than simply "flat" as Dr. Moller contends. To the contrary, the term "substantially flattened surfaces" includes surfaces which are generally flat or flatter, even if they have some curvature, whether it be convexity or concavity.

Dr. Moller next refers to the '178 patent specification as disclosing two embodiments of thumb and finger hold surfaces: (1) surfaces which appear to be flat except for protruding ribs and (2) surfaces which have been provided with a concavity or accurate depression. See Moller Rep. at 4. From this disclosure, Dr. Moller concludes that "[t]he term 'substantially flattened surfaces' to the extent it has any meaning, thus refers to a flat surface." Id. I disagree with Dr. Moller for the following reasons: First, I understand that it is improper to read the exemplary embodiments disclosed in the patent specification into the claims. Although the '178 patent specification discloses the two embodiments referred to above, it is my understanding that it is improper to limit the plain meaning of "substantially flattened surfaces"

to these two examples. In this regard, I note that at Col. 5, lines 55-60, the '178 patent

specification states:

> The foregoing specification and drawings are merely
> illustrative of the invention and are not intended to limit the
> invention to the disclosed embodiment. Variations and changes
> which are obvious to one skilled in the art are intended to be within
> the scope and nature of the invention which are defined in the
> appended claims.

Second, there is an inconsistency in Dr. Moller's opinion. He recognizes that the

specification shows an embodiment where the substantially flattened surfaces are not exactly

flat. This is the arcuate depression referred to in Col. 4, lines 21-24. His conclusion that

"substantially flattened surfaces" must mean a flat surface is at odds with his acknowledgment

that the specification provides an example where the surfaces are not exactly flat. For this same

reason, I disagree with Dr. Moller's assertion (at page 4 of his report) that the specification does

not support an interpretation in which the surfaces are entirely curved or convex.

Dr. Moller asserts that "extrinsic sources, to the extent that it is necessary to

consult them, do not support an interpretation that permits an entirely curved surface to be called

"substantially flattened." Moller Rep. at 4. However, the extrinsic source to which he refers, his

Exhibit E, provides an explanation of the word "flatness." As noted above, "flat" or "flatness" is

different than the claim term at issue, which is "substantially flattened." Accordingly,

explanations of the meaning of "flatness" do not, in my opinion, assist in ascertaining the

meaning of the claim term at issue.

Since I disagree with Dr. Moller's opinion that "substantially flattened" means

"flat," I further disagree with his conclusion that because the elongated surfaces of the Pearl

Plastic finger grip area have some curvature, they do not meet this claim term. See Moller Rep.

at 5-12. Dr. Moller spends several pages reporting experiments he has run and mathematical

calculations he has performed to show that the finger grip surfaces of the Pearl Plastic

applicators have some curvature. Id. In my opinion, one can see that the surfaces have some

curvature simply by inspecting them. Based on my opinion that "substantially flattened surfaces" includes surfaces which have some curvature so long as they are generally flat or flatter (than, for example, a circle or a cylinder), the slight curvature of the elongated sides of the Pearl Plastic finger grip area does not allow P&G to escape infringement. This is because, despite the curvature to which Dr. Moller goes to great lengths to document, the two surfaces of the Pearl Plastic finger grip area remain "substantially flattened."

For the reasons set forth above and in my report of October 20, 2002, it is my opinion that the Pearl Plastic tampon product includes all of the elements of Claims 1, 2, 3, 9 and 10 of the '178 patent, including the claimed "substantially flattened surfaces." Accordingly, Pearl Plastic literally infringes Claims 1, 2, 3, 9 and 10.

It is also my understanding that, even if a claim element is not literally present in an accused product, infringement may still be found under the Doctrine of Equivalents if the accused device performs substantially the same function in substantially the same way to achieve substantially the same result as the claim element which is not literally present. In other words, infringement occurs where each element of the claim is found either literally or equivalently in the accused device.

In this case, Dr. Moller implicitly concedes that all of the elements of Claims 1, 2, 3, 9 and 10 of the '178 patent are literally present in the Pearl Plastic product with the exception of "substantially flattened surfaces." As noted above, my opinion is that this element is also literally present in the Pearl Plastic product. However, even if Mr. Moller's erroneous construction of "substantially flattened surfaces" as meaning "flat surfaces" were to be accepted, it is my opinion that this claim element would still be present equivalently in the Pearl Plastic product, since the elongated, slightly curved surfaces of the Pearl Plastic product perform substantially the same function in substantially the same way to achieve substantially the same result.

As set forth in the '178 patent specification, the function of the finger grip area of the patented applicator, in cooperation with the transitional section, is to "significantly reduce the amount of involuntary rotation in comparison with the use of a conventional applicator having a cylindrical barrel." '178 patent, Col. 2, lines 63-68. See also Col. 2, lines 25-33. The way that this function is achieved under Dr. Moller's claim construction is to make the surfaces flat, thereby resulting in a "significantly greater surface contact area (finger/applicator interface) in comparison to a conventional applicator having a relatively cylindrical barrel." Id., Col. 2, lines 58-63. The result achieved is to significantly reduce the lack of control during insertion providing "a consumer perceptible, enhanced feeling of security, comfort and control which is theorized to be a result of a reduced level of muscle tension required to maneuver the applicator and deploy the tampon from the applicator." Id. Col. 2, line 66 to Col. 3, line 6. See also Col. 5, lines 27-41 (noting that the finger and thumb hold of the invention enhances stability in maneuvering and positioning the applicator and reduces or eliminates slip or play, thereby reducing muscle tension).

The Pearl Plastic finger grip surfaces, which are elongated but slightly convex, perform substantially the same function as the "substantially flattened surfaces" under Dr. Moller's construction of that term. The elongated, slightly convex shape of the surfaces, in cooperation with the transitional section, also function to reduce rotation and thereby reduce or eliminate slip or play during insertion and ejection. The Pearl Plastic finger grip surfaces perform that function in substantially the same way as the "substantially flattened surfaces" under Dr. Moller's claim interpretation; i.e., by providing, in cooperation with the transitional section, a significantly greater surface contact area at the finger/applicator interface as compared with conventional cylindrical applicators. Finally, the Pearl Plastic finger grip surfaces achieve substantially the same result as the "substantially flattened surfaces" under Dr. Moller's claim interpretation; i.e., they provide an enhanced feeling of consumer comfort and control during

NY\740523 2
6

insertion and ejection of the tampon. P&G's website marketing the Pearl Plastic has this to say: "The grip's contoured shape makes it easier to hold, enabling you to position the applicator comfortably, gently and effectively." See Exhibit B to my October 20, 2002 report.

Evan Hutchison

December 27, 2002