IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION (DAYTON)

| | |
|---|---|
| PLAYTEX PRODUCTS, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>THE PROCTOR & GAMBLE DISTRIBUTING COMPANY, an Ohio corporation, and THE PROCTOR & GAMBLE COMPANY, an Ohio corporation,<br><br>Defendants. | CASE NO. C-1-02-391<br><br>(Hon. Thomas M. Rose)<br><br>**PLAYTEX'S OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE IDENTICAL EXPERT TESTIMONY OF PLAINTIFF'S TWO REDUNDANT EXPERT WITNESSES** |

I.    INTRODUCTION

P&G currently wants to present non-infringement testimony from its outside expert, James Moller, and P&G's head of product development, Joan Szkutak. This is understandable because, although Moller and Szkutak will testify on the same general topic, they have very different backgrounds and expertise. Thus, Playtex was surprised when P&G filed this motion claiming that infringement testimony from Playtex's outside expert, Mario Turchi, and its head of product development, Evan Hutchison, should be excluded because it is purportedly cumulative. Surely the same rules apply to both parties, yet P&G is asking the Court to prevent Playtex from doing *exactly the same thing* P&G is trying to do.

P&G's "have-it-both-ways" approach highlights the substantive weakness of its motion. The infringement analysis in this case will necessarily require expertise in the fields of ergonomics and commercial manufacturing. Turchi is an industrial designer with extensive applied ergonomics experience. Hutchison has almost thirty years of experience manufacturing

1

consumer products, including tampon applicators. Because of their different backgrounds and qualifications, Turchi and Hutchison will present their infringement testimony from different angles, both of which are important to an understanding of the patented invention and the issue of infringement. Their testimony will be helpful to the jury on the core issue in dispute – whether Tampax Pearl infringes the '178 patent – and will be neither "identical" nor "redundant."

P&G's motion is really an effort to recover from the fact that it has failed to properly designate experts from the two relevant fields: industrial design/ergonomics and manufacturing. P&G failed to designate Szkutak as an expert witness, and it apparently fears that the Court will exclude Szkutak's non-infringement opinion as improper expert testimony from a lay witness. But P&G's failure to follow the expert designation requirements is not grounds to exclude the testimony of Playtex's experts (who were designated properly). P&G's motion should be denied.

## II.   FACTS

### A.   The Patent.

This is a patent infringement case where Playtex is asserting that P&G's Tampax Pearl product infringes claims 1, 2, 3, 9 and 10 of U.S. Patent No. 4,536,178 ("the '178 patent"). The '178 patent explains that the problem with conventional cylindrical tampon applicators is that they permit "rotational movement or play, making maneuvering and positioning difficult." 178 patent, col. 1, l. 61 – col. 2, l. 8. Playtex solved this problem by inventing a tampon applicator with "substantially flattened surfaces" and shoulders providing "a finger and thumb hold or grip which enables a user to comfortably hold the applicator with little or no involuntary rotation and to eject the tampon from the applicator and more accurately control the placement of the tampon." *See, e.g., id.* col. 2, ll. 28-33; col. 5, ll. 26-40. The novel finger grip of the '178

patent provides a user with "added security, comfort and control." *Id.* col. 5, ll. 38-40.  Given these ergonomic-related benefits of the '178 patent, it will be helpful for the jury to hear testimony from an expert with experience in the field of consumer product design and ergonomics, such as an industrial designer, to explain the invention that is the '178 patent.

On June 4, 2003, the Court construed the claim term "substantially flattened surfaces" to mean a device with "two opposite surfaces that are flat within a geometric, manufacturing tolerance . . ." Memorandum Opinion (Dkt. 52) p. 14.  As P&G explained to the Court, it is general practice to use tolerances in the field of manufacturing because, due to limitations in manufacturing processes, it is impossible to make perfectly flat parts.  *See* Defendants' Pre-Markman Hearing Brief (Dkt. 38) pp. 18-19.  Therefore, a flatness manufacturing tolerance defines the amount of acceptable curvature a part may have in order to be deemed "flat" for manufacturing purposes.  Expert discovery following the Court's claim construction has focused on highly technical manufacturing-related topics such as why tolerances are needed, which tolerance to apply, how to properly apply a tolerance, the thermodynamic properties of plastic and the use of high-temperature injection molded plastic for the large scale commercial manufacturing of consumer products.  Accordingly, it will also be helpful for the jury to hear testimony from an expert with a background in the field of large scale manufacturing of consumer products.

**B.     The Experts.**

Playtex has two experts in this case, Mario Turchi and Evan Hutchison.  Turchi is the co-founder of Ion Design, an award-winning industrial design firm.  Defendants' Motion To Exclude Identical Testimony Of Plaintiff's Two Redundant Expert Witnesses ("P&G Mtn.") Exh. 1 at p. 1.  Turchi has extensively applied his skills in industrial design and applied ergonomics to design products across a range of consumer, medical, and professional markets.

3

*Id.* Turchi has developed many products including tampon applicators, insulin delivery devices, flossers, air fresheners, and telephones. *Id.* Turchi's designs have been widely published and he holds numerous U.S. patents. *Id.* Turchi has prepared several expert reports and will testify at trial on two general subjects: the infringement and validity of the '178 patent. Given the ergonomic aspects of the '178 patent, Turchi's testimony and his experience in the field of applied ergonomics will be particularly helpful to the jury to resolve the core issues in this case.

Evan Hutchison is Playtex's Vice President, Product Development, responsible for managing all of Playtex's product development activities. *Id.* Exh. 2 at p. 1. Hutchison holds a degree in mechanical engineering and he has almost thirty years of experience in developing consumer products such as Lysol, Woolite, French's Mustard, Banana Boat sunscreens, and Playtex tampon applicators. *Id.* at pp. 1-2. A significant aspect of Hutchison's experience relates to designing and enhancing the manufacturing processes for consumer products, and tampon applicators in particular. *Id.* Hutchison has first-hand experience dealing with the challenges of mass producing injection molded plastic parts and the use of manufacturing tolerances to compensate for limitations in manufacturing processes. *See* Declaration Of Allon Stabinsky In Support Of Playtex's Joint Opposition To Defendants' (A) Motion For Summary Judgment Of Non-Infringement Based On Markman Ruling, And (B) Motion To Exclude The Opinions In Plaintiff's Supplemental Expert Reports ("Stabinsky Decl.") Exh. A p. 290, l. 12 – p. 298, l. 14. Playtex timely designated Hutchison as an expert witness, Hutchison has prepared several expert reports, and he has been deposed twice by P&G as an expert. Hutchison will only offer an opinion on infringement. He will not (unlike Turchi) testify regarding the validity of the '178 patent. Hutchison's inside experience in manufacturing

large quantities of consumer products will be particularly helpful to the jury, given the Court's "geometric, manufacturing tolerance" claim construction.

Like Playtex, P&G also has two expert witnesses. G.A.M Butterworth will testify on the issue of the validity of the '178 patent. James Moller was initially proffered to testify only on the issue of infringement, but his recent supplemental report (prepared *after* this motion was filed) indicates that he will offer some overlapping testimony with Butterworth on the issue of invalidity. *See* Stabinsky Decl. Exh. C at pp. 11-13. Moller is an Associate Professor of Mechanical Engineering at Miami University, Ohio. Exh. 1 at p.1.[1] Moller's experience has been largely in academia, with a brief stint as a test engineer for aircraft engines. *Id.* Exh. A p. 2. Moller apparently has little or no experience with the large scale manufacturing of consumer products. *Id.* Prior to this case, Moller had no experience with the design or manufacturing of tampon applicators. *Id.*

Apparently recognizing the deficiencies in Moller's experience, as well as the need for infringement testimony from witnesses with expertise in different fields, P&G recently announced that it intends to supplement Moller's non-infringement opinion with testimony regarding the "non-infringement of the '178 patent" from P&G employee Joan Szkutak. Joint Final Pretrial Order (Dkt. 54) Exh. B at p. 2. As P&G's Director, Feminine Care, Product Development, Szkutak is essentially Hutchison's counterpart at P&G. However, unlike Hutchison, Szkutak was not designated as an expert witness and she has not been subject to expert discovery. Therefore, in accordance with the Court's June 20, 2003 deadline for filing motions *in limine,* Playtex timely filed a motion to exclude Szkutak's non-infringement testimony on the ground that P&G is improperly trying to present expert testimony from a lay

---

[1]     Playtex has not attached Exhibits B-M to the Moller report because they contain confidential P&G information not relevant to the resolution of this issue.

5

witness. *See* Playtex's Motion In Limine To Preclude Defendants' Fact Witness Joan Szkutak From Offering Testimony Regarding The Non-Infringement Of The Accused Product At Trial (Dkt. 58). Although P&G has long known that both Turchi and Hutchison will generally be offering infringement opinions at trial, P&G did not timely file a motion to exclude their purportedly "identical testimony" (although P&G did file four other motions *in limine*). Thus, it appears that P&G filed this motion more out of fear that the Court will exclude Szkutak's non-infringement testimony, than out of a genuine concern for so-called "redundant" testimony.

### III.  ARGUMENT

#### A.  Relevant Expert Testimony May Only Be Excluded "Sparingly," And It Is Common Practice To Use Multiple Infringement Experts In Patent Cases.

Federal Rule of Evidence 403 only permits the exclusion of relevant evidence if its "probative value is *substantially outweighed* by the danger of unfair prejudice." (emphasis added). "In performing the 403 balancing, the court should 'give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value.'" *Deters v. Equifax Credit Information Services*, 202 F.3d 1262, 1274 (10th Cir. 2000). Relevant evidence is presumptively admissible and should only be excluded "sparingly." *Blancha v. Raymark Inds.*, 972 F.2d 507, 516 (3rd Cir. 1992). This presumption is especially strong when the evidence tends to prove a proposition directly at issue in the case. *Id.*

Although it is within the trial court's discretion to limit the number of experts who testify on the same topic, it is an abuse of discretion to exclude partially cumulative testimony from an expert who has different qualifications than the other experts. *See Johnson v. United States*, 780 F.2d 902, 905-06 (11th Cir. 1986) (overruling trial court's exclusion of testimony from defendant's third expert witness regarding the appropriate standard of care in a medical malpractice case). Therefore, courts normally allow similar or overlapping opinion testimony

from experts with different backgrounds and expertise, especially where their testimony addresses a central concern in the case. *See Doe v. TAG, Inc.*, 1993 WL 484212 at *2 (N.D. Ill. 1993) (rejecting defendants assertion that they would be unfairly prejudiced by the "unfair aura of authority and confirmation to the joint opinion" from the identical testimony of two expert witnesses) (attached as Exh. 2); *Pacific Employers Ins. Co. v. P.B Hoidale Co., Inc.*, 782 F.Supp. 564, 565 (D. Kan. 1992) (rejecting motion to exclude five expert witnesses from testifying about the same topic).

Because patent cases typically involve technical matters, it is common practice to use more than one expert witness to testify on the same topic. *See Univ. of Rochester v. G.D. Searle & Co., Inc.*, 249 F.Supp.2d 216, 228 (W.D. N.Y. 2003) (hearing testimony from plaintiff's two experts on the issue of enablement); *Acushnet Co. v. Dunlop Maxfli Sports Corp.*, 2000 WL 987979 at *10 (D. Del. 2000) (hearing testimony from plaintiff's two experts on issue of obviousness) (attached as Exh. 3). In particular, plaintiffs in patent infringement cases routinely use at least two expert witnesses to testify regarding the issue of infringement. *See Aspex Eyewear, Inc. v. E'lite Optik, Inc.*, 2002 WL 1751381 at *30-32 (denying motion to strike testimony of plaintiff's two infringement experts) (attached as Exh. 4); *Lifescan, Inc. v. Home Diagnostics, Inc.*, 103 F.Supp.2d 345, 361 (D. Del. 2000); *Eolas Tech. Inc. v. Microsoft Corp.*, 2002 WL 31375531 at *14 (N.D. Ill. 2002) (attached as Exh. 5); *Laser Technology, Inc. v. Nikon, Inc.*, 215 F.Supp.2d 1135, 1164 (D. Col. 2002); *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 243 F.Supp.2d 31, 40 (S.D. N.Y. 2003). Accordingly, courts rarely, if ever, find the requisite unfair prejudice from "identical statements" from expert witnesses in patent cases. *See, e.g., Smith Corona Corp. v. Pelikan, Inc.*, 784 F.Supp. 452, 469 (M.D. Tenn. 1992).

Instead, "such matters are fair game for cross-examination, rebuttal proof, and closing arguments." *Id.*

Here, as in the above cases, Playtex will also present testimony from two expert witnesses on the issue of infringement.[2] However, although Turchi and Hutchison will both testify on the general topic of infringement, they will present their testimony from different angles. As explained above, an infringement analysis of the '178 patent necessarily implicates both the fields of ergonomics and manufacturing tolerances. Turchi's testimony will focus on the ergonomic attributes of the '178 patent and he will explain to the jury how Tampax Pearl has the same infringing features. Hutchison's testimony will focus on manufacturing topics and he will teach the jury why, although Tampax Pearl is slightly curved, it is nonetheless deemed "flat" within a "geometric, manufacturing tolerance." Thus, both Turchi and Hutchison will provide relevant testimony with a different focus that will be helpful to the jury on the core issue in dispute in this case. Indeed, P&G's attempt to have two witnesses of its own (Moller and Szkutak) to testify regarding infringement proves that testimony is needed from multiple witnesses with different qualifications. *See, e.g., Johnson*, 780 F.2d at 905-06 (ordering new trial because court excluded partially cumulative testimony from third expert witness with different qualifications).

Furthermore, the jury will be disadvantaged if either Turchi's or Hutchison's infringement testimony is excluded. Each of the three infringement expert witnesses has a different set of qualifications: Turchi has strong ergonomic expertise, Hutchison has first-hand experience mass producing consumer products like tampon applicators, and Moller is schooled in the theoretical and experimental aspects of mechanical engineering. No single expert brings

---

[2] As explained above, only Turchi will testify on the issue of validity, so there is no basis (nor does P&G assert any) to exclude Turchi's validity testimony.

8

all of these skill sets to the table. If Turchi's testimony were excluded, the jury will be deprived of the ergonomic expertise that is crucial to a thorough understanding of the invention of the '178 patent. If Hutchison's testimony were excluded, the jury will be deprived of the commercial manufacturing expertise that is necessary to understand the Court's "geometric, manufacturing tolerance" claim construction.

Playtex will also be unfairly prejudiced if either Turchi's or Hutchison's infringement testimony is excluded. If Turchi's testimony were excluded, Playtex would not only lose his ergonomic expertise, but it also would no longer have an "outside" expert on infringement. The jury might unfairly discount Hutchison's testimony because he is employed by Playtex, a point P&G will surely emphasize at trial. If Hutchison's testimony were excluded, Playtex would lose his first-hand experience manufacturing tampon applicators and applying manufacturing tolerances – which are among the most technologically complex issues in the case. P&G's belated attempt to proffer expert infringement testimony from Szkutak proves that there is a need for testimony from an industry insider with experience in the mass production of tampon applicators. On the other hand, P&G will suffer no prejudice if Turchi and Hutchison testify because, as one court correctly noted, P&G will have ample opportunity to address their testimony through "cross-examination, rebuttal proof, and closing arguments." *See Smith Corona,* 784 F.Supp. at 469.

The cases relied upon by P&G are contrary to its position here. For example, *In re Air Crash Disaster* was a lawsuit regarding a commercial airplane crash. The victims' families and the airline sued the plane manufacturer for making a defective aircraft, while the manufacturer counter-sued the airline, claiming that the crew negligently operated the aircraft. *In re Air Crash Disaster,* 86 F.3d 498, 513 (6th Cir. 1996). After the families presented their

9

affirmative case, the manufacturer settled the lawsuit with them. *Id.* The case between the airline and the manufacturer continued and the manufacturer successfully moved the court to exclude the expert testimony presented by the families during their affirmative case, which had been dismissed as a result of the settlement. The airline was permitted to put on "exhaustive evidence, including the testimony of twenty-four experts" but it eventually lost the case. *Id.* at 514. The court of appeals held that it was not error for the trial court to exclude the expert testimony of the families' experts because "giving the [airline] a double helping of experts would be unfair." *Id.* at 527. Thus, contrary to P&G's misleading assertion, the "double helping" of experts refers not to the number of experts (twenty four were allowed) but to cumulative testimony from a *dismissed party's* expert witnesses. *See* P&G Mtn. p. 8. Furthermore, the court indicated that the result would have been different if the families' experts had added a "new angle or argument." *In re Air Crash*, 86 F.3d at 527.

Similarly, in *Kendra Oil,* the court held it was "harmless error" to exclude an expert from reading the same logbooks that had been read by a "gaggle of other geologists." *Kendra Oil & Gas Co. v. Homco, Ltd.*, 879 F.2d 240, 243 (7th Cir. 1989). The court also indicated that the result would have been different if the testimony would have added a "new angle or argument." *Id.* Thus, *In re Air Crash* and *Kendra Oil* indicate that it is normal for multiple experts to testify on the same topic. Furthermore, they show that expert testimony adding a "new angle" – such as Turchi's and Hutchison's testimony in this case – may not be excluded.

The *Kentucky River Community Care* case is inapplicable because that case involved the exclusion of expert testimony interpreting statutes, which is a task reserved for the court. *Kentucky River Community Care, Inc. v. National Labor Relations Board*, 193 F.3d 444,

452 (6th Cir. 2000). None of P&G's other cases are applicable either because P&G notably does not cite to a single patent case where multiple infringement opinions were excluded as cumulative.

    **B.    P&G's Motion Should Be Denied Because It Is Untimely.**

P&G's motion should also be denied as untimely because, pursuant to the Court's General Order No. 1, motions *in limine* could not be filed after June 20, 2003, and P&G did not seek leave of Court to belatedly file this motion. P&G's assertion that this motion could not be filed earlier because P&G needed to depose Playtex's experts on their supplemental reports (P&G Mtn. p. 1 fn. 1) has no merit because P&G's motion establishes that P&G has long known that both Turchi and Hutchison would testify regarding infringement. *Id.* at pp. 2-3. P&G did not file a motion to exclude their testimony in accordance with the Court's June 20 deadline, but it did file four other motions *in limine* that day. It was not until after Playtex moved to exclude Szkutak's improper "expert" testimony on infringement that P&G filed this motion. P&G's failure to designate Szkutak as an expert is not grounds to exclude critical expert testimony from Playtex on the core issue in dispute.

**IV.    CONCLUSION**

Based on the foregoing discussion, Playtex respectfully requests that Defendants' Motion To Exclude Identical Expert Testimony Of Plaintiff's Two Redundant Expert Witnesses be denied.

Dated: October 3, 2003

          Respectfully submitted,

By: <u>s/Allon Stabinsky</u>
    Matthew B. Lehr (*pro hac vice*)
    Allon Stabinsky (*pro hac vice*)
    Attorneys for Plaintiff
    LATHAM & WATKINS LLP
    135 Commonwealth Drive
    Menlo Park, CA 94025
    Telephone: (650) 328-4600
    Facsimile: (650) 463-2600
    E-mail: allon.stabinsky@lw.com

    Robert J. Gunther, Jr. (*pro hac vice*)
    LATHAM & WATKINS LLP
    885 Third Avenue, Suite 1000
    New York, New York 10022-4802
    Telephone: (212) 906-1200
    Facsimile: (212) 751-4864

    Paul B. Martins, Esq. (0007623)
    HELMER, MARTINS & MORGAN CO., L.P.A.
    1900 Fourth & Walnut Centre
    105 East Fourth Street
    Cincinnati, OH 45202
    Telephone:   (513) 421-2400
    Facsimile:   (513) 421-7902

SV\391680.1