EXHIBIT 4

INTRODUCTION

These model jury instructions were drafted by the Model Patent Jury Instruction Subcommittee of the American Intellectual Property Law Association's Federal Litigation Committee.  The substantive drafting process was completed in July, 1997.  These model instructions were then approved by the Board of Directors of the AIPLA, subject to some stylistic changes.  They were first posted on the AIPLA's website in April, 1998.

One of the subcommittee's fundamental objectives was to draft a set of instructions that would not be biased in favor of either the patent owner or the accused infringer.  Another fundamental goal was to accurately reflect the current state of the law on many of the major issues that typically arise in patent infringement cases, as those principles of law had been declared by the Federal Circuit Court of Appeals through July, 1997.

The subcommittee has also attempted to prepare a set of instructions that will be more easily understood by a jury than many prior sets of patent jury instructions.  However, much of the burden of assisting the jury's understanding of the applicable principles of patent law must be carried by the parties and the Court by tailoring these instructions to the facts of each particular case.  For example, most cases will not involve all of the issues that are addressed by these model instructions; instructions that are superfluous should not, of course, be given.  On the other hand, the subcommittee did not attempt to draft jury instructions that would cover every issue that might possibly arise in a patent infringement jury trial.  In addition, there may well be further

362462_1

1   details that should be added to particular instructions to address specific issues that will

2   arise in certain cases.

3        Of course, it is also intended that these instructions be used in conjunction

4   with other instructions dealing with "non-patent" issues (e.g., credibility of witnesses).

5        Finally, it is intended that the trial court "breathe life" into these model

6   instructions by relating the legal principles in the instructions to the particular factual

7   contentions of the parties. In many instances the subcommittee has indicated where

8   such customizing can be accomplished by placing [brackets] in the instructions. See,

9   for example, Anticipation Instruction No. 1. These instructions were drafted with the

10  hope and expectation that the trial court would add further evenhanded comments to

11  explain to the jury how these instructions relate to the particular factual contentions

12  advanced by the parties.

13       Copies of these model jury instructions are also available on disk. Requests

14  for disks can be directed to:

15               American Intellectual Property Law Association
16               2001 Jefferson Davis Highway
17               Suite 203
18               Arlington, VA 22202
19               Attn: (703) 415-0780
20
21  April 2, 1998              Richard S. Florsheim
22                             Chairman,
23                             Model Jury Instructions Subcommittee
24                             Federal Litigation Committee
25                             American Intellectual Property Law Association
26

362462_1

TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................... i

ACKNOWLEDGMENTS ......................................................................... iii

PRELIMINARY JURY INSTRUCTIONS .................................................. 1

GLOSSARY OF PATENT TERMS ......................................................... 9

GLOSSARY OF TECHNICAL TERMS .................................................... 10

CLAIM CONSTRUCTION AND LITERAL INFRINGEMENT .................................. 11

   1.     Claim Construction and Infringement ................................................. 11

   2.     Claim Construction and Infringement - Generally .................................... 11

   3.     Construction of Means-Plus-Function Claims........................................ 13

   4.     Infringement - Generally................................................................ 15

   5.     Direct Infringement - Knowledge of Patent or Intent to Infringe is Immaterial. ................................................................................ 16

   6.     Inducing Patent Infringement ........................................................... 17

   7.     Contributory Infringement................................................................ 19

   8.     Two Types of Direct Infringement; Literal Infringement.......................... 21

   9.     Infringement of Means-Plus-Function Claims........................................ 22

   10.    Infringement of Dependent Claims.................................................... 24

   11.    Infringement of Open Ended or "Comprising" Claims............................. 26

   12.    Infringement of "Consisting Essentially of" Claims ................................ 27

   13.    Infringement of "Consisting of" Claims.............................................. 28

   14.    Reverse Doctrine of Equivalents ...................................................... 29

1
1                        PRELIMINARY JURY INSTRUCTIONS

2      Members of the jury:

3          Now that you have been sworn, I have the following preliminary instructions for

4      your guidance on the nature of the case and your role as jurors.

5      I. THE NATURE OF THE ACTION AND THE PARTIES

6
7              This is a patent case. The patents involved in this case relate to [subject

8      matter] technology. [Briefly describe technology involved]  During the trial, the parties

9      will offer testimony to familiarize you with this technology.  For your convenience, we

10     will distribute a glossary of some of the technical terms to which the parties may refer

11     during the trial.

12             The United States Patent and Trademark Office has granted [a/several]

13     patent[s] to [named inventor(s)] for inventions relating to this technology. [Name of

14     party] is the owner [exclusive licensee] of the patent[s], which [is/are] identified by the

15     Patent Office by number:  No. X,XXX,XXX (which may be called "the 'XXX

16     patent"); [identify additional patents].  These patents may also collectively be referred

17     to as "the [named inventor(s)] patents."  [Identify relationship of any other parties

18     aligned with the patent owner; e.g. exclusive licensee]

19     A.   The United States Patent

20             A valid United States patent gives its owner the right to exclude others from

21     [practicing the patented process], making using, offering to sell, or selling the patented

22     invention [a product made by the patented process] within [or importing the patented

23     invention into] the United States, its territories, and its possessions.  During the trial,

v

1    the parties will offer testimony to familiarize you with how one obtains a patent from

2    the United States Patent and Trademark Office (sometimes referred to as "the PTO"),

3    as well as with the contents of a patent, including the specification or written

4    description and the claim or claims by which the applicant defines the subject matter of

5    his or her invention.

6         I will briefly describe some of the terms for you so that you have some

7    background in patent terminology. The Patent and Trademark Office, the PTO, is in

8    the Washington, D.C. area and is an agency of the Federal Government. It has more

9    than a thousand technically educated examiners who examine applications for patents.

10        The application is the initial set of papers filed with the PTO by the

11   applicant[s]. In addition to some other papers such as the inventor's oath, the

12   application includes a specification, which must have a written description of the

13   invention telling what the invention is, how it works, and how to make and use it so as

14   to enable others skilled in the art to do so [IF A BEST MODE DEFENSE IS

15   ASSERTED: and what the inventor believed at the time of filing to be the best way of

16   making his or her invention]. The specification concludes with one or more numbered

17   sentences. These are the claims. The purpose of the claims is to particularly point out

18   what the applicant regards as his or her invention. When the patent is eventually issued

19   by the PTO, the claims define the scope of the patent owner's exclusive rights during

20   the life of the patent. In a few minutes, I will describe for you the meaning of the

21   claim[s] of the '___ patent[s].

2

1          After the applicant files the application, a PTO patent examiner who reviews

2   (or examines) the patent application to determine whether the claims are patentable and

3   whether the specification adequately describes the invention claimed. In examining a

4   patent application, the patent examiner makes a search of the PTO records for prior art

5   to the patent application claims. The examiner considers, among other things, whether

6   each claim defines an invention that is new, useful, and not obvious in view of this

7   prior art. The prior art is defined by statute and I will give specific instructions as to

8   what constitutes prior art to [each/the] patent in suit after the close of the evidence. But

9   generally it is technical information and knowledge that was known to the public either

10  before the invention by the applicant or more than a year before the effective filing date

11  of the application.

12          Following the prior art search and examination of the application, the patent

13  examiner then advises the applicant in writing what the examiner has found and

14  whether he has "allowed" any claim. This writing from the PTO examiner is called an

15  office action. More often than not, the initial office action by the patent examiner

16  rejects the claims. The applicant then responds to this, and sometimes changes the

17  claims or submits new claims. This process may go back and forth between the patent

18  examiner in the PTO and the applicant for several months or even for years until the

19  examiner is satisfied that the application and claims meet the conditions for

20  patentability.

21          The papers generated during this time of corresponding back and forth

22  between the PTO patent examiner and the applicant is what is called the prosecution

3

1    history.  This history of written correspondence is contained in a file in the PTO, and

2    consequently *some people over the course of the trial may call this history the file*

3    *wrapper.*

4

5    ### B.  Patent Litigation

6          A [person] [company] is *said to be infringing on claims of a patent when*

7    they, without permission from the patent owner, make, use, import, offer to sell or sell

8    the patented invention, as defined by the claims, within the United States before the

9    term of the patent expires.  A patent owner that believes someone is infringing on his or

10   her exclusive rights under a patent may bring a lawsuit like this to stop the alleged

11   infringing acts and recover damages.  The patent owner has the burden to prove

12   infringement of the claims of the patent.  The patent owner also has the burden to prove

13   damages caused by that infringement, which are adequate to compensate for the

14   infringement.[1]  [IF LOST PROFITS WILL BE SOUGHT:  Damages may be measured

15   by the patent owner's lost profits caused by the infringement.]  Damages may not be

16   less than a reasonable royalty for the use made of the invention.

17         A person sued for allegedly infringing a patent can deny infringement, and

18   can also defend by proving the asserted claim[s] of the patent[s] [is/are] invalid [IF

19   UNENFORCEABILITY IS ASSERTED:  or unenforceable].  The accused infringer

20   has the burden to prove invalidity by clear and convincing evidence.  In evaluating

---

[1]    If damages are bifurcated, modify this instruction as appropriate to the trial procedures
ordered by the Court.

4

362462_1

1    infringement or invalidity, each claim is to be evaluated independently.  I will now

2    briefly explain the parties' basic contentions in more detail.

3

4

5

II. <u>CONTENTIONS OF THE PARTIES</u>

In this case, the plaintiff, _____, contends that the defendant,

_____, makes, uses and sells a [product] that infringes claim XX of the '___

patent. [The plaintiff] has the burden of proving that [the defendant] infringes the '___

patent by a preponderance of the evidence. That means that [the plaintiff] must show

that it is more likely that [the defendants'] [product] infringes than it does not infringe.

There are two ways in which a patent claim can be directly infringed. First,

a claim can be literally infringed. Second, a claim can be infringed under what is

called the "doctrine of equivalents," which I will address shortly.

To determine literal infringement, you must compare the accused product

[method] with each claim that [plaintiff] asserts is infringed. It will be my job to tell

you what the patent claims mean. You must follow my instructions as to the meaning

of the patent claims.

A patent claim is literally infringed only if [defendant's] product [method]

includes each and every element [method step] in that patent claim. If [defendant's]

product [method] does not contain [include] one or more elements [method steps]

recited in a claim, [defendant] does not literally infringe that claim. You must

determine literal infringement with respect to each patent claim individually.

You may find that [defendant's product or method] infringes a claim of

[plaintiff's] patent, even if not every element [step] of that claim is present in

[defendant's] [product or method]. However, to do so, you must find that there is an

equivalent [component, part or method step] in [defendant's product or method] for

6

362462_1

1     each element [step] of the patent claim that is not literally present in [the defendant's]

2     [product or method]. This is called infringement under the doctrine of equivalents.

3           [The plaintiff] has the burden of proving by a preponderance of the evidence

4     that [the defendant's] [product or method] contains the equivalent of each element of the

5     claimed invention that is not literally present in [the defendant's product or method].

6           [The defendant] denies that it is infringing the '___ patent. [The defendant]

7     also contends that the '___ patent is invalid for several reasons. [INSERT BRIEF

8     DESCRIPTION OF THE PARTICULAR INVALIDITY DEFENSES BEING

9     ASSERTED].

10           Invalidity is a defense to infringement. Therefore, even though the PTO

11     examiner has allowed the claims of the '___ patent to issue, you, the jury, have the

12     ultimate responsibility for deciding whether the claims of the '___ patent are valid.

13     [The defendant] bears the burden of proving invalidity by clear and convincing

14     evidence. This is a higher burden than a preponderance of the evidence; on the other

15     hand, this does not require proof beyond a reasonable doubt. It will be your job, at the

16     end of this trial, to determine whether the defendant has met its burden of proving the

17     invalidity of the '___ patent claims. Clear and convincing evidence is evidence that

18     produces in your mind an abiding conviction that the claims are invalid.

19

20

21

22     III.       <u>TRIAL PROCEDURE</u>

1        We are about to commence the opening statements in the case. Before we

2   do that, I want to explain to you a little bit about the procedures that we will be

3   following during the trial and the format of the trial. This trial, like all jury trials,

4   comes in six stages or phases. We have already been through the first phase, which is

5   to select you as jurors. We are now about to begin the second phase, the opening

6   statements. The opening statements of the lawyers are statements about what each side

7   expects the evidence to show. The opening statements are not evidence in the case.

8        The evidence comes in the next phase, the third phase, when the witnesses

9   will take the witness stand and the documents will actually be offered and admitted into

10  evidence. In the third phase, the plaintiff goes first in calling witnesses to the witness

11  stand. These witnesses will be questioned by the plaintiff's counsel in what is called

12  direct examination. After the direct examination of a witness is completed, the

13  opposing side has an opportunity to cross-examine the witness. After the plaintiff has

14  presented its witnesses, the defendant will call its witnesses, who will also be examined

15  and cross-examined.

16       The evidence often is introduced somewhat piecemeal, so you as jurors need

17  to keep an open mind as the evidence comes in. Wait until all the evidence comes in

18  before you make any decision. In other words, keep an open mind throughout the

19  entire trial.

20       After we conclude the third phase, after the evidence has been presented,

21  then the lawyers again have an opportunity to talk with you in what's called closing

22  argument, which is the fourth phase. Again, what the lawyers say is not evidence. The

1   lawyers' closing arguments to you are for the purpose of helping you in making you

2   determination.

3          After that phase, we reach the fifth phase of the trial, which is when I read

4   you the jury instructions. In that phase, I will instruct you on the law. I have already

5   explained a little bit about the law to you. But later, in this fifth phase of the trial, I

6   will explain the law in much more detail.

7          Finally, in the sixth phase of the trial it will be time for you to deliberate.

8   You can then evaluate the evidence, discuss the evidence among yourselves and make a

9   determination in the case. Remember that it will be your duty to find what the facts are

10  from the evidence as presented at the trial. You, and you alone, are the judges of the

11  facts. You have to apply those facts to the law and the patent claims as I instruct you at

12  the close of the evidence.[2]

13         You are the judges of the facts. I will explain to you the rules of law which

14  apply to this case, and I will also explain to you the meaning and scope of the patent

15  claims. You must follow that law and claim interpretation whether you agree with it or

16  not. Nothing I say or do during the course of the trial is intended to indicate what your

17  verdict should be.

18

19

20

21                    GLOSSARY OF PATENT TERMS

---

[2]     If the Court has ordered bifurcation, consider adding an instruction advising the jury about the procedure the Court has adopted.

1    **Application** - The initial papers filed by the applicant in the United States

2    Patent and Trademark Office (also called the Patent Office or PTO).

3    **Claims** - Claims are the numbered sentences appearing at the end of the

4    patent and define the invention.  The words of the claims define the scope of the patent

5    owner's exclusive rights during the life of the patent.

6    **File wrapper** - See prosecution history below.

7    **License** - Permission to use the patented invention, which may be granted by

8    a patent owner (or a prior licensee) in exchange for a fee called a "royalty" or other

9    consideration.

10   **Office action** - Communication from the patent examiner regarding the

11   specification of the patent application and/or the claims pending in the patent

12   application.

13   **Patent Examiners** - Personnel employed by the PTO who review (examine)

14   patent applications, each in a specific technical area, to determine whether the claims of

15   a patent application are patentable and whether the disclosure adequately describes the

16   invention.

17   **Prior art** - Knowledge that is available to the public either prior to the

18   invention by applicant or more than a year prior to the effective filing date of his/her

19   application.  [If § 102(g) prior art that was not publicly available before these dates will

20   be introduced at trial, add to this instruction.]

21   **Prosecution history** - The written record of proceedings in the United States

22   Patent and Trademark Office ("PTO") between the applicant and the PTO.  It includes

362462_1

10

1    the original patent application and later communications between the PTO and

2    applicant. The prosecution history may also be referred to as the "File wrapper" of the

3    patent during the course of this trial.

4        **References** - Any item of prior art used to determine patentability.

5        **Specification** - The specification is the information which appears in the

6    patent and concludes with one or more claims. The specification includes the written

7    text, the claims and the drawings. In the specification, the inventor sets forth a

8    description telling what the invention is, how it works, and how to make and use it so

9    as to enable others skilled in the art to do so [and what the inventor believed at the time

10   of filing to be the best way of making his or her invention].

11       **Ordinary Skill In Art** - _____

12

13                    GLOSSARY OF TECHNICAL TERMS

14

15   [To be agreed upon between the parties]

16

11

362462_1

1  POST TRIAL INSTRUCTIONS

2  CLAIM CONSTRUCTION AND LITERAL INFRINGEMENT

3  Claim Construction and Infringement No. 1

4  <u>Claim Construction and Infringement - Generally</u>

5  [The plaintiff] has accused [the defendant] of infringing the _____ patent.

6  [The plaintiff] has the burden of proving infringement by a preponderance of the

7  evidence.

8  Before you decide whether or not [the defendant] has infringed the claims of

9  [the plaintiff's] patent or whether or not [the plaintiff's] patent is valid, you will have to

10  understand the patent "claims." The patent claims are numbered paragraphs at the end

11  of the patent. The patent claims involved here are claims _____, beginning at column

12  ___, line ___ of the patent, which is exhibit ___ in evidence. The claims are "word

13  pictures" intended to define, in words, the boundaries of the invention described and

14  illustrated in the patent. Only the claims of the patent can be infringed. Neither the

15  written description, which we have already discussed, nor the drawings of a patent can

16  be infringed. Each of the claims must be considered individually, and not all claims of

17  a patent have to be infringed for the patent to be infringed. To prove patent

18  infringement, [plaintiff] need only establish by a preponderance of the evidence that one

19  claim is infringed.

20  You have heard evidence about both [the plaintiff's] commercial product

21  [process] and [the defendant's] commercial product [process]. However, in deciding

22  the issue of infringement you may not compare [the defendant's] accused product

12

1   [process] to [the plaintiff's] commercial product [process]. Rather, you must compare

2   [the defendant's] accused product [process] with the claims of the _____ patent when

3   making your decision regarding infringement.

4   35 U.S.C. § 112; *Panduit Corp. v. Dennison Mfg. Co.*, 836 F.2d 1329, 5 USPQ2d
5   1266 (Fed. Cir. 1987); *Smithkline Diagnostics, Inc. v. Helena Labs. Corp.*, 859 F.2d
6   878, 8 USPQ2d 1468 (Fed. Cir. 1988); *Amstar Corp. v. Envirotech Corp.*, 823 F.2d
7   1538, 3 USPQ2d 1412 (Fed. Cir. 1987); *Datascope Corp. v. SMEC, Inc.*, 879 F.2d
8   820, 11 USPQ2d 1321 (Fed. Cir. 1989), *cert. denied*, 493 U.S. 1024 (1990).
9

362462_1

1    Claim Construction and Infringement No. 2

2    <u>Claim Construction</u>

3    To decide the questions of infringement and validity, you must first

4    understand what the claims of the patent cover, that is, what they prevent anyone else

5    from doing. You must use the same claim meaning for both your decision on

6    infringement and your decision on validity.

7    In this case [the plaintiff] and [the defendant] agree about the meaning of

8    several parts of the claims. [The plaintiff] and [the defendant] do not agree about the

9    meaning of other parts of the claims. It is my duty to interpret these contested words

10   and groups of words for you.

11   I will now tell you the meanings of the following words and groups of words

12   from the patent claims. You must use these meanings in your deliberations concerning

13   both infringement and invalidity.

14   [READ STIPULATIONS AND COURT'S CLAIM CONSTRUCTIONS]

15   *Smithkline Diagnostics, Inc. v. Helena Labs. Corp.*, 859 F.2d 878, 8 USPQ2d 1468
16   (Fed. Cir. 1988); *Structural Rubber Prods. Co. v. Park Rubber Co.*, 749 F.2d 707,
17   223 USPQ 1264 (Fed. Cir. 1984); *Markman v. Westview Instruments, Inc.*, 52 F.3d
18   967, 34 USPQ2d 1321 (Fed. Cir. 1995).
19

14

362462_1