# Manual for Complex Litigation

## Third

Federal Judicial Center
1995

EXHIBIT B

# Manual for Complex Litigation, Third

Federal Judicial Center
1995

This Federal Judicial Center publication was undertaken in furtherance of the Center's statutory mission to develop and conduct education programs for judicial branch employees. The views expressed are those of the authors and not necessarily those of the Federal Judicial Center.

of separate trials should, however, be balanced against the potential for increased cost, delay (including delay in reaching settlement) and inconvenience, particularly if the same witnesses may be needed to testify at both trials, and of unfairness if the result is to prevent a litigant from presenting a coherent picture to the trier of fact.[355]

Care must be taken in deciding which issues may and should be severed for separate trial and the order in which to try them. Under *Beacon Theatres*, the right to trial by jury on legal claims may not (except under "the most imperative circumstances") be lost by a prior determination of equitable claims; this may require trial of legal claims before the court decides related claims in equity, or that they be tried concurrently.[356] In addition, issues should not be severed for trial if they are so intertwined that they cannot fairly be adjudicated in isolation,[357] or when severance would create a risk of inconsistent adjudication.

Generally when issues are severed for separate trials, they should be tried before the same jury unless they are entirely unrelated. Severance may take the form of having evidence on discrete issues presented sequentially, with the jury returning a verdict on an issue before the trial moves on to the next issue (see *infra* section 22.34).

### 21.633 Special Verdicts and Interrogatories

Special verdicts or interrogatories accompanying a general verdict may help the jury focus on the issues, reduce the length and complexity of the instructions, and minimize the need for, or scope of, retrial in the event of reversible error.[358] They can provide guidance in conducting discovery, ruling on nonjury issues (possibly with some issues presented to the jury while others are reserved for decision by the court) or motions for summary judgment,[359] trying remaining issues, or negotiating settlement. Having counsel draft (and submit at the pretrial conference) proposed verdict forms along with jury instructions will help focus counsel's attention on the specific issues in dispute and inform the court.

Special verdicts and interrogatories should be drafted so as to help the jury understand and decide the issues while minimizing the risk of inconsistent verdicts. The questions should be arranged on the form in a logical and comprehensible manner; for example, questions common to several causes of action or de-

---

355. *See In re* Bendectin Litig., 857 F.2d 290 (6th Cir. 1988) (severed trial creates risk of "sterile or laboratory atmosphere").
356. *See* 359 U.S. at 510–11.
357. *See* Gasoline Prods. Co. v. Champlin Ref. Co., 283 U.S. 494, 500 (1931) (antitrust).
358. Fed. R. Civ. P. 49. *See infra* § 22.451.
359. *See In re* Plywood Antitrust Litig., 655 F.2d 627 (5th Cir. 1981) (special verdicts following a joint trial of all cases (including "opt-out" cases) on all issues except individual amounts of damages provided foundation for summary judgment motions regarding damages).

fenses should be asked only once, and related questions should be grouped together. Where the legal standards applicable to similar claims or defenses differ (for example, where different law may apply to different parties), careful drafting of questions on a special verdict form can ease problems that consolidation could otherwise cause. Issues not in dispute should be excluded from the verdict form.

Special verdicts may also be used in connection with a procedure by which issues are submitted to the jury sequentially. The jury may be asked to consider a threshold or dispositive issue and return its verdict before submission of other issues, which may be rendered moot by the verdict.

Some judges and attorneys are reluctant to use these devices out of fear of inconsistent verdicts and jury confusion. These problems can be avoided by careful draftsmanship. Parties' views on the desirability of special verdicts or interrogatories will differ, however, if they are seen as more advantageous to one side than the other; the court will have to evaluate the arguments for and against them in the particular case.

The court may also wish to suggest that the parties stipulate to accept a majority verdict if the jury is not unanimous[360] or to waive a verdict and accept a decision by the judge based on the trial evidence. Although such stipulations may be obtained after the case has gone to trial, the parties may be more amenable before trial begins.

### 21.64 Procedures to Expedite Presentation of Evidence

.641 Statements of Facts and Evidence   122
.642 Pretrial Rulings on Objections   122
.643 Limits on Evidence   124

The principal purpose of the final pretrial conference is the "formulat[ion of] a plan for trial, including a program for facilitating the admission of evidence."[361] The plan should eliminate, to the extent possible, irrelevant, immaterial, cumulative, and redundant evidence, and further the clear and efficient presentation of evidence. Essential to the accomplishment of this purpose is a final definition of the issues to be tried, after elimination of undisputed and peripheral matters. The process begun at the initial conference of defining and narrowing issues, discussed in *supra* section 21.3, should reach completion at the final pretrial conference. Attention may then be directed to the proof the parties expect to offer at trial.

Review of that proof should be accompanied by consideration of fair, effective, and perhaps innovative ways of presenting it. This may include, in addition

---

360. *See* Fed. R. Civ. P. 48.
361. Fed. R. Civ. P. 16(d).

thority that should rarely be exercised other than with respect to an expert appointed by the court under Fed. R. Evid. 706 (see *supra* section 21.51). An alternate approach might be for the judge to suggest questions to counsel outside the hearing of the jury, or inquire whether the matter will be clarified or addressed by another witness.

## 22.4 Jury Trials

.41 Impaneling the Jury   146
.42 Juror Note Taking/Notebooks/Questions   149
.43 Jury Instructions   150
   .431 General Principles   150
   .432 Preliminary Instructions   151
   .433 Interim and Limiting Instructions   152
   .434 Final Instructions   153
   .435 Supplemental Instructions and Readbacks   155
.44 Avoiding Mistrial   155
.45 Verdicts   156
   .451 Special Verdicts and General Verdicts with Interrogatories   156
   .452 Judgment as a Matter of Law   158
   .453 Return of Verdict   159

Jury trials in complex cases place a heavy responsibility on the judge, who must ensure not only that the parties receive a fair trial but also that the jurors are treated with courtesy and consideration, are not burdened more than necessary, and are given the help they need to perform their task adequately. Jury management raises a number of issues which, though discussed in the following sections, should also be taken up at the final pretrial conference.

Aside from the largely mechanical matters here discussed, it is well for court and counsel to have in mind the critical role jurors play in the justice process. Although they are the decision makers, they are often made to feel like the forgotten participants in the trial: evidence is presented with little attention to the jurors, they are kept in the dark about much of what is happening in court, and frequently they are left to wait while the judge and counsel are busy with other matters. High on the judge's list of concerns, therefore, should be the considerate and courteous treatment of jurors by counsel, staff, and the court itself.

## 22.41 Impaneling the Jury[403]

**Size of the venire and the panel.** To minimize the burden on citizens and the cost to the court, the number of prospective jurors summoned should be no greater

---

403. *See generally* Bench Book, *supra* note 42, §§ 2.02–2.03.

than is reasonably necessary, taking into account such factors as the size of jury panel desired for trial, the nature of the case, and the number of jurors likely to be excused. Enough persons must be called, however, so that the court will not run out of prospective jurors in the course of the selection process. Under Fed. R. Civ. P. 48, between six and twelve jurors must be selected for a civil trial.[404] Though jurors may be excused during trial for good cause,[405] federal courts no longer seat alternates in civil trials; all jurors not excused participate in deliberations. Absent stipulation,[406] the court may not accept a verdict from a jury of fewer than six.[407] The court should seat enough jurors to minimize the risk of a mistrial, considering the probability of incapacity, disqualification, or other developments requiring the excuse of jurors during trial. The primary factor, of course, is the expected length of trial. One rule of thumb is to select eight jurors for a trial expected to last up to two months, ten jurors for a trial expected to last four months, and twelve jurors for a longer trial. In determining the appropriate size of the jury, the judge may also consider asking the parties if they will stipulate that in the event of a hung jury they will accept a verdict from a less than unanimous jury[408] or allow the case to be decided on the record by the court.[409] The parties may be more amenable to entering such agreements before voir dire than after the jury has been selected.

Voir dire. The court may examine prospective jurors itself or allow the parties to do so.[410] If the court conducts the examination, it must "permit the parties or their attorneys to supplement the examination by such further inquiry as it deems proper or . . . itself submit to the prospective jurors such additional questions of the parties or their attorneys as it deems proper."[411] Where the judge conducts voir dire, the attorneys should also be invited to submit proposed questions in

---

404. Local rules may also address jury size. Criminal cases require a jury of twelve, but before verdict the parties may stipulate to a jury of fewer than twelve and a verdict returned by fewer than twelve. Fed. R. Crim. P. 23(b).

405. Fed. R. Civ. P. 47(c).

406. While the parties may stipulate to the return of a verdict by a jury of fewer than six, cf. Colgrove v. Battin, 413 U.S. 149, 164 (1973) (referring to possibility without comment), the advisory committee's note to Rule 48 suggests that this be avoided. In addition to raising constitutional issues, smaller juries may be less reliable. There is considerable support for seating a jury of twelve, particularly in complex cases. See the discussion and citations in Ballew v. Georgia, 435 U.S. 223 (1978) (criminal conviction by jury of fewer than six violates due process).

407. The *Colgrove* court held that a six-person jury satisfied the Seventh Amendment, but explicitly declined to comment on the constitutionality of a smaller number. 413 U.S. at 159–60.

408. *See* Fed. R. Civ. P. 48.

409. *See* Fed. R. Civ. P. 39(a)(1).

410. Fed. R. Civ. P. 47(a); Fed. R. Crim. P. 24(a).

411. Fed. R. Civ. P. 47(a). Fed. R. Crim. P. 24(a) is similar, but applies to the defendant, defense counsel, and the government's attorney.

advance of trial and to conduct reasonable follow-up questioning of the jurors after the judge has finished. The court may allow counsel to conduct the entire voir dire, subject to reasonable control necessary to avoid extending the process unduly and to limit the attorneys to inquiring about juror qualifications rather than arguing the case. In light of constitutional restrictions on the use of peremptory challenges on discriminatory grounds, greater leeway may need to be given to counsel in voir dire to lay the foundation for appropriate challenges.

Procedures for the conduct of voir dire vary widely. Inquiries may be directed to the venire, to smaller panels, to jurors one at a time, or by a combination of these methods; challenges may then be exercised privately or before the prospective jurors. Challenges may be made by alternate strikes or presentation of lists, simultaneously or alternating, and the parties may or may not know the identity, order, and other information about replacement jurors before making a challenge.[412] Whatever method the court decides to use, to avoid confusion and prejudice counsel should be informed before trial begins.

In cases involving potentially large jury venires, pre-voir dire jury questionnaires are often mailed to prospective jurors to elicit basic information and identify prospective jurors unable to serve. This procedure avoids unnecessary trips to court, but may lead to an excessive number of requests to be excused and to inappropriate inquiries about the case. An alternative is to have prospective jurors complete a questionnaire in court before voir dire.[413]

During voir dire, prospective jurors should be informed of the expected length of trial, the trial schedule, and other facts that may bear on a juror's ability and qualifications to serve. The prospect of a long trial may produce many requests to be excused, creating the risk of a jury consisting predominantly of persons who are retired or otherwise not employed outside their home. The judge can reduce requests for excuses by making introductory comments emphasizing the responsibilities of citizenship, stressing the importance of juries being composed of a representative cross-section of the population, describing the litigation so as to point out the challenge and opportunity of service, and reminding the venire of the fact that only a few will be selected to serve.

---

412. While the struck panel system allows the attorneys to make more informed challenges, it has been criticized as encouraging improperly motivated challenges and increasing the likelihood of objections based on Edmonson v. Leesville Concrete Co., 111 S. Ct. 2077 (1991) (prohibiting private litigants from exercising race-based peremptory challenges). *See* Leonard B. Sand & Steven A. Reiss, *A Report on Seven Experiments Conducted by District Court Judges in the Second Circuit*, 60 N.Y.U. L. Rev. 423, 425 & nn.16–17 (1985). *See also* J.E.B. v. Alabama, 114 S. Ct. 1419 (1994) (gender-based peremptory challenges violate equal protection).

413. See Sample Jury Questionnaire *infra* § 41.7.

Some judges permit counsel to deliver opening statements to the entire venire, to enable prospective jurors to respond to voir dire questions more intelligently.

Peremptory challenges. In civil (and misdemeanor) cases, each party is allowed three peremptory challenges.[414] Several plaintiffs or several defendants may be considered a single party for that purpose, but the court may allow additional challenges, depending on whether parties' interests conflict or diverge significantly. Additional challenges should be granted sparingly because they will increase the size of the venire and lengthen voir dire and the jury-selection process. Presumptively, each side should have the same number of challenges.[415]

### 22.42 Juror Note Taking/Notebooks/Questions

Note taking. Permitting jurors to take notes, once discouraged, has now become widely accepted. The arguments in favor of permitting it are particularly compelling in long and complicated trials.[416] Concerns over note taking are minimized by the fact that many jurors will not take notes, but denying them permission to do so is demeaning and inconsistent with the large measure of responsibility the system places on jurors, and it may hamper their performance. Jurors should be provided with paper (or notebooks with space for notes, see *supra* section 22.32) and pens. Some judges instruct jurors that notes are only for the individual juror's use and should not be shown or read to others, that note taking should not distract them from observing the witnesses, and that notes should be left in the jury room during recesses.

Juror notebooks. In addition to holding exhibits provided to individual jurors during the trial (see *supra* section 22.32), notebooks may provide jurors with information that will be helpful to them to organize and retain the information adduced during the trial, such as witness and exhibit lists, pictures of witnesses, chronologies and time lines, glossaries (see *supra* section 22.31), and excerpts from instructions.[417] The court should control the amount of material in the notebooks to ensure that they remain clear and useful.

---

414. 28 U.S.C. § 1870; Fed. R. Civ. P. 47(b). In felony cases, defendants are allowed ten challenges jointly and the government six (with additional challenges for alternates, if selected); the court may allow additional defense challenges if there are multiple defendants. Fed. R. Crim. P. 24(b).

415. Some judges have used unconventional methods of jury selection in complex cases to increase the participation of relatively more experienced and educated jurors. Different techniques have been used with the consent and cooperation of counsel. For a description, see William W Schwarzer, *Reforming Jury Trials,* 132 F.R.D. 575, 580–81 (1991).

416. *See id.* at 590–91.

417. *See* Parker, *supra* note 376, at 550. Preliminary and interim instructions are discussed in *infra* §§ 22.432–22.433.

Juror questions. Some judges have found that permitting jurors to ask questions in open court (in civil cases) can be helpful to jury comprehension. Others require that any questions be submitted in writing for consideration by the judge and counsel. The judge may say nothing on this subject, or may inform jurors that questions are permitted at the conclusion of a witness's examination, for the purpose of helping them understand the evidence; jurors may be cautioned, however, that it is for the lawyers to try the case and that matters occurring to them during one witness's examination may later be covered by another's.[418]

**22.43 Jury Instructions**[419]

.431 General Principles   150
.432 Preliminary Instructions   151
.433 Interim and Limiting Instructions   152
.434 Final Instructions   153
.435 Supplemental Instructions and Readbacks   155

*22.431 General Principles*

Jurors cannot be expected to render an intelligent verdict if the instructions are unintelligible to them. When a trial is complex and protracted, the need for instructions the jury will understand is particularly compelling. Instructions should therefore use language that lay persons can understand, be concise, concrete, and simple, use the active voice, avoid negatives and double-negatives, and be organized in logical sequence for the reader. As discussed in *supra* section 21.65, the court should direct counsel to submit proposed instructions at the final pretrial conference to focus the attention of the court and counsel on the issues to be tried.

Substantive instructions should be tailored to the particular case, avoiding generalized pattern instructions. Propositions of law should be explained with reference to the facts and parties in the case; illustrations familiar to jurors may also help. Instructions phrased in the language of appellate opinions are not likely to be meaningful to jurors. Most judges reword counsel's proposed instructions, which tend to be argumentative and one-sided, into language of their own, or at least edit them substantially. Simply combining the proposals submitted by counsel for each side is unlikely to produce sound and intelligible instructions. Instructions should be read to the jury with appropriate emphasis and variation

---

418. The pros and cons of juror questioning, and the procedures to follow if it is allowed, are discussed in United States v. Johnson, 914 F.2d 136, 137–39 (8th Cir. 1990) (criminal); DeBenedetto v. Goodyear Tire & Rubber Co., 754 F.2d 512, 513–17 (4th Cir. 1985); Schwarzer, *supra* note 415, 132 F.R.D. at 591–93 (also providing sample instruction).

419. *See generally* Bench Book, *supra* note 42, §§ 2.04–2.05.

in tone, to enhance comprehension and retention; rarely should the reading take much more than a half hour. One or more copies of the instructions should then be sent into the jury room (see *infra* section 22.434).

### 22.432 Preliminary Instructions

It is difficult for jurors to deal effectively with the evidence presented during a lengthy trial if they have no framework of the factual and legal issues to give structure and context to what they see and hear. Moreover, the jurors should understand the trial process in which they are about to participate and what they can expect. Preliminary instructions provide context and basic guidance for the conduct of jurors. They will typically cover the following subjects:

- **Preliminary statement of legal principles and factual issues.** The instructions should summarize the key factual issues, including a statement of the facts and the parties' major contentions (which may be drafted jointly by the parties), and explain briefly the basic legal issues and principles, such as the elements of claims and defenses to be proved. The court should emphasize that these instructions are preliminary—that no effort is made to cover all of the issues or principles—and that deliberations will be governed by the final instructions to be given at the conclusion of the case. Since one purpose of these instructions is to prepare jurors for opening statements, they are usually given first, with counsel permitted to refer to them in their opening statements. The judge may, however, defer instructions until after opening statements or give supplemental preliminary instructions at that time.

- **The conduct of the trial.** Jurors should be informed of the course of the trial from opening statements to verdict, the methods by which evidence is presented, and the procedure for raising and resolving objections. In some cases, such as those involving charges of conspiracy, the court may wish to inform the jury that cooperation among the litigants at trial has been urged by the court and should not be taken as evidence of concerted action with respect to the matters at issue in the litigation.

- **Schedule.** In addition to the hourly and daily schedule established for the trial of the case, jurors should be advised of any holidays or other planned recesses.

- **Precautions to prevent mistrial.**[420] The court should direct jurors not to discuss the case or communicate with trial participants. It should warn against exposure to publicity and attempts at independent fact-finding,

---

420. See also *infra* § 22.44 (avoiding mistrial).