LEXSEE 1985 U.S. DIST. LEXIS 17545

**CANDLE CORPORATION, Plaintiff, v. BOOLE & BABBAGE, INC.,
Defendant AND RELATED COUNTERCLAIM**

**No. CV 82-4758-PAR**

**UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF
CALIFORNIA**

**1985 U.S. Dist. LEXIS 17545**

**July 24, 1985, Decided
August 2, 1985, Filed**

**LexisNexis (TM) HEADNOTES - Core Concepts:**

**JUDGES:** [*1]

Pamela Ann Rymer, United States District Judge.

**OPINIONBY:**

RYMER

**OPINION:**

MEMORANDUM OF DECISION AND ORDER

Defendant Boole & Babbage ("Boole") has filed the following motions in limine which seek to:

A. Exclude "industry estoppel" evidence;

B. Bar reference to the effect of injunctive relief on Candle's employees;

C. Bar use of the term "monopoly;"

D. Order the return of or exclude certain privileged documents;

E. Redact portions of articles; and

F. Order proof at trial.

Plaintiff Candle Corp. has filed the following motions in limine which seek to:

G. Exclude evidence regarding Aubrey Chernick's personal wealth and compensation;

H. Confine evidence regarding reduction to practice to Claim 1 of the patent; and

I. Exclude evidence regarding Boole's "experimental use" or "experimental intent" after January 8, 1969.

A. "Industry estoppel" evidence.

Boole seeks to exclude, on grounds of irrelevance and unfair prejudice, evidence which Candle contends relates to secondary considerations of obviousness, inequitable conduct before the PTO and the "exceptional case" provision for attorneys fees. Candle argues that the evidence is relevant to [*2] two secondary tests for obviousness -- commercial non-acquiescence and simultaneous invention.

1. Commercial non-acquiescence. No reported case has squarely held that evidence of commercial non-acquiesence may or may not be introduced to show non-validity of the patent. Although it has been recognized that the licensing of an invention is a valid indicator of patent validity, see CBS, Inc. v. Sylvania Electric Products, Inc., 415 F.2d 719, 728 (1st Cir. 1969), Eibel Process Co. v. Minnesota & Ontario Paper Co., 261 U.S. 45, 55 (1923), acceptance of a license is not significant

**EXHIBIT C**

1985 U.S. Dist. LEXIS 17545, *

when it is attributable to factors other than a belief in the validity of the patent. Chisum, Patents, § 5.05[3] at 5-253 (1985) A number of courts have expressed skepticism at the probative value of licensing agreements. See John E. Thropp's Sons Co. v. Seiberling, 264 U.S. 320, 329-30 (1924) (discounting the significance of a license where the smaller licensee may have agreed to the license to avoid litigation); Phillips Electrical v. Thermal & Electric Industries, 450 F.2d 1164, 1179 (3d Cir. 1971); see also Comment, Subtests of Non-obviousness, 112 U.Pa.L.Rev. 1169, 1179 (1964) [*3] ("it is crucial that the licensees be primarily motivated by respect for the patentee's legal rights. If other factors underlie a decision to license, the arrangement may lose evidentiary significance"); CBS, Inc. v. Sylvania Electric Products, Inc., 415 F.2d 719, 728 (1st Cir. 1969) (fact that the leader in the field chose to license the patent was entitled to some weight so long as there was no showing that the licensing arrangement was motivated by considerations other than those relating to evaluations of validity and desires to avoid infringement).

While it may be that evidence of commercial non-acquiescence has some probative value in some cases, in this case, however, there is no contention by Boole that commercial acquiescence indicates non-obviousness. In addition, although the acceptance of a license by a competitor may reasonably support an inference of recognition of validity, the rejection of a license may equally imply lack of an infringing product, lack of clout, or an adversary position. The difference, it would appear, is because the acceptance of a license entails an action to the licensee's detriment -- the payment of royalties -- whereas non-acquiescence [*4] may require nothing more than taking the position that the patent is invalid.

Further, even if clearly relevant, evidence of commercial non-acquiescence must be predicated on a foundational showing of failure to license motivated by considerations other than those relating to evaluations of validity and desire to avoid infringement. Cf. CBS, Inc. v. Sylvania Electric Products, Inc., 415 F.2d 719 (1st Cir. 1969). Of the proffered evidence, only Exhibit 81 (the Bitner/IBM letter) arguably reflects a considered judgment that a commercial licensing arrangement proposed by Boole be rejected because of patent invalidity. As to it, there is considerable potential for prejudicial impact on account of the apparent facts that Boole did not demand, but rather inquired about, licensing. Additionally, IBM and Boole occupied such disparate positions in the market at the time that IBM's response is misleading and its probative value is substantially lessened. Exhibits 82 [NASA letter of February 2, 1973], 102 [Boole Board of Directors minutes] and 211 [NASA letter of August 26, 1974],

although they indicate an evaluation that the patent is invalid, appear to have been made in the context [*5] of an administrative proceeding rather than a proposed licensing arrangement. Thus, their relevance to commercial non-acquiescence is not demonstrated. Each of the other documents either does not reflect a belief in the patent's invalidity or does not indicate a commercial relationship and the necessary foundation is lacking. Consequently, the documents are not admissible with respect to the issue of commercial non-acquiescence.

2. Simultaneous and independent invention. Although evidence that a number of other persons, working under the same state of the prior art, arrived at the same or similar solutions to that embodied in a patent claim may tend to show that the claimed solution was obvious, E. I. Du Pont de Nemours & Co. v. Berkley & Co., 620 F.2d 1247 (8th Cir. 1980); 2 Chisum, Patents, § 5.05[7] at 5-258 (1985), Candle must establish as a foundation that the other inventors were working under the same state of the prior art, and arrived at the same or similar solutions independently and contemporaneously and without infringing Boole's patent. None of the documents which Boole seeks to preclude is sufficient, standing alone, to provide a foundation of simultaneous [*6] invention. Instead, the documents generally evidence nothing more than a dispute over possible infringement and the validity of Boole's patent. Evidence that other companies were possibly infringing Boole's invention is not, in itself, relevant to whether those companies had arrived at a simultaneous invention independently. Accordingly, the documents which are the subject of the motion do not appear to be relevant to the simultaneous invention subtest.

3. Inequitable conduct. Candle argues that the documents are relevant to Boole's knowledge of the state of the technology and thus to whether Boole failed to disclose important information to the Patent Office. However, all of the documents were written well past the time Boole applied for its patent and thus would not be relevant to the state of Boole's knowledge at the time of applying to the PTO.

4. Exceptional case. Under 35 U.S.C. § 285 provides: "The court in exceptional cases may award reasonable attorneys fees to the prevailing party." Such cases include those where the patent was procured through fraud combined with misconduct at trial and bad faith assertion of infringement. Rohm & Haas Co. v. Crystal Chemical [*7] Co., 736 F.2d 688, 693 (Fed. Cir. 1984). Even if the documents which are the subject of this motion are relevant to whether this is an exceptional case warranting departure from the American rule against an award of attorney fees, their introduction is appropriate only at such time as it has

1985 U.S. Dist. LEXIS 17545, *

been determined that Candle is the previling party and is thus limited to post-trial consideration by the Court.

B. References to injunctive relief and its effect on Candle employees.

Candle argues that references to injunctive relief and the resultant economic cost of terminating employment is relevant to the second prong of its laches defense: that Candle detrimentally relied on Boole's inaction. Boole seeks to exclude this information on grounds that under Fed.R.Evid. 403 the evidence is unfairly prejudicial.

While references to hiring employees, like all other evidence that Candle expanded its operations, is relevant to the issue of reliance, any reference to possible harm resulting to the employees from enjoining Candle's infringement is not relevant. See Zenith Radio Corp. v. Matsushita Electic Industrial Co., Inc., 505 F.Supp. 1125, 1172 (E.D. Pa. 1980).

Given the many [*8] ways in which Candle can meaningfully demonstrate its reliance on Boole's inaction, the relevance of evidence pertaining to the hiring of employees is marginal at best and the evidence is potentially cumulative. Furthermore, the sympathy with which some jurors may view the potential unemployment of Candle employees makes real the risk of unfair prejudice against Boole. Accordingly, under Fed.R.Evid. 403, evidence regarding harm to Candle or its employees as a result of an injunction in Boole's favor shall be excluded.

C. Use of the term "monopoly."

Although the term "patent monopoly" has found its way into legal parlance, it has been recognized that such a description "is irrelevant when considering patent questions." Schenck v. Nortron Corp., 713 F.2d 782, 786 n.3 (Fed. Cir. 1983). The Federal Circuit has also recognized that use of "monopoly" in the context of patent disputes has the potential to exert a prejudicial effect because of the pejorative connotations associated with the term. Schenck v. Nortron Corp., 713 F.2d 782, 784 (Fed. Cir. 1983); Jamesbury Corp. v. Litton Industrial Products, Inc., 756 F.2d 1556, 1558-59 (Fed. Cir. 1983).

Candle has neither [*9] demonstrated nor argued how use of the word "monopoly" fairly relates to any issues in this case or is necessary in the context of this action. In view of the potential prejudicial effect and the absence of any real necessity to use the term, Candle may not refer to patent rights as a "monopoly" or "patent monopoly."

D. Return of or exclusion of certain privileged documents.

Boole argues that a draft complaint and accompanying correspondence between Boole and its lawyer should be ordered returned and/or excluded because their introduction at trial would violate the attorney-client privilege and the work product doctrine. Additionally, Boole contends that the documents are inadmissible hearsay and present a risk of unfair prejudice.

1. Attorney-client privilege. The party asserting the privilege bears the burden of establishing: (1) the holder of the privilege is a client; (2) the person to whom the communication was made is a member of the bar or his subordinate; (3) the communication relates to a fact of which the attorney was informed by his client for the purpose of securing legal services and not for the purpose of committing a crime or tort; and (4) the privilege [*10] has not been waived by the client. S.E.C. v. Kingsley, 510 F.Supp. 561, 563 (D. D.C. 1981).

A waiver of the privilege may be either express or implied. A waiver by implication, as is argued here, contains two elements. The first requires analysis of the subjective intent of the holder, that is, whether the holder intended to waive the privilege. The second element is objective: whether it is fair and consistent with the assertion of the claim or defense being made to allow the privilege to be invoked. United States v. Woodall, 438 F.2d 1317, 1325 (5th Cir. 1970); United States v. Catalanotto, 468 F.Supp. 503, 506 (D.C. Ariz. 1978). From the parties' papers, it is impossible to determine when the inadvertent disclosure took place and how soon after the disclosure Boole sought to invoke the attorney-client privilege. Boole's counsel made clear in his letter of May 8, 1985 that the inadvertent disclosure of certain documents was not meant to constitute a waiver of the attorney-client privilege. This motion to exclude the documents was filed on June 3, 1985. These objections leads the Court to conclude that Boole did not subjectively intend to waive the privilege.

Nor does [*11] the second factor compel a finding of waiver. Considerations of fairness typically require disclosure where the holder of the privilege voluntarily discloses favorable information without objection but invokes the privilege to protect unfavorable communications. See In re Sealed Case, 676 F.2d 793, 818 (D.C. Cir. 1982); Handgards, Inc. v. Johnson & Johnson, 413 F.Supp. 926, 929 (N.D. Cal. 1976); Duplan Corp. v. Deering Milliken, Inc., 397 F.Supp. 1146, 1161 (D. S.C. 1974). For example, in Weil v. Investment/Indicators, Inc., 647 F.2d 18, 23 (9th Cir. 1981), the Ninth Circuit held that a party may not disclose a privileged communication about a material issue and then invoke the privilege to prevent discovery of other communications about the same matter. Here, to

1985 U.S. Dist. LEXIS 17545, *

apply the privilege would not be unfair because Boole does not seek to withhold other communications on the same subject. Thus, neither element supports a finding of waiver of the attorney-client privilege.

b. Work product doctrine. With respect to documents and tangible things, Fed.R.Civ.P. 26(b) (3) codifies the work product doctrine announced in Hickman v. Taylor, 329 U.S. 495 (1947). See 8 [*12] Wright & Miller, Federal Practice: Civil, § 2023 at 193 (1970). Although Rule 26(b)(3) concerns discovery of documents, the same principles apply with equal force to issues involving the admissibility of documents. Rule 26(b)(3) allows discovery of documents prepared in anticipation of litigation or trial "only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means."

Here the draft complaint and accompanying letters were clearly prepared in anticipation of litigation. Candle seeks to introduce the complaint to show that the invention was on-sale before the critical date. This type of factual information "merely shifts the standard presumption in favor of discovery and requires the party seeking discovery to show 'adequate reasons' why the work product should be subject to discovery." In re Sealed Case, 676 F.2d 793, 810 (D.C. Cir. 1982). At the same time, the documents contain the opinions, legal theories and thought processes of counsel. Thus the documents "receive some higher level of protection and a [*13] party seeking discovery must show extraordinary justification." Id.

Regardless of which standard should be applied to the documents, Candle has not made the minimal showing that it has a substantial need for the documents and is unable without undue hardship to obtain the substantial equivalent of the materials by other means. Consequently, the work product doctrine also bars the introduction of the documents into evidence.

c. The Fraud/Crime Exception. The work product doctrine and the attorney-client privilege do not apply when "a privileged relationship is used to further a crime, fraud or other fundamental misconduct." In re Sealed Case, 676 F.2d 793, 807 (D.C. Cir. 1982). Thus, "the crime-fraud exception comes into play if 'the client consults an attorney for advice that will assist the client in carrying out a contemplated illegal or fraudulent scheme." In re International Systems, 693 F.2d 1235, 1242 (5th Cir. 1982).

The party invoking the exception must make out a prima facie showing of fraud which is analyzed in two parts. First, there must be a prima facie showing of a violation sufficiently serious to defeat the work product privilege. Second, there must [*14] be some reasonable relationship between the work product sought and the prima facie violation. In re Sealed Case, 676 F.2d 793, 814-15 (D.C. Cir. 1982). In other words, the party seeking to vitiate the privilege must establish: "(1) the client was engaged in or planning a criminal or fraudulent scheme when he sought the advice of counsel to further the scheme and (2) the documents containing the attorney's opinion work product must bear a close relationship to the client's existing or future scheme to commit a crime or fraud." In re Murphy, 560 F.2d 326, 338 (8th Cir. 1977).

Even assuming that Candle can make out a prima facie showing of fraud on the patent office, it has failed to show that the letters and draft complaint are related in any way to the alleged fraud. The documents were prepared by different counsel from those who prepared the patent application and in anticipation of antitrust litigation against a competitor. Because the complaint drafted by Cooley, Godward is unrelated to any alleged fraud on the PTO, the the crime/fraud exception does not apply. In re Murphy, 560 F.2d 326, 339 (8th Cir. 1977); but see Kockums Industries v. Salem Equipment, 561 F.Supp. [*15] 168 (D. Or. 1983).

d. Hearsay. The documents in question are a draft complaint which indicates that the PPE and CUE were on sale in May 1968 (see para. 15), a letter from the drafter of the complaint asking for comments, and the Boole's response which was to decline comment in view of the the likelihood that litigation would not be necessary. Despite its tentative character, the complaint is a "statement" because it is a "written assertion." Fed.R.Evid. 801(a).

Of the recognized exceptions to the hearsay rule for admissions by a party opponent, Fed.R.Evid. 801(d)(2), only exceptions (C) and (D) apply. Generally, whether the statement falls within Rule 801(d)(2)(C) is determined by applying agency doctrine rather than analyzing the statement's trustworthiness. 4 Weinstein's Evidence, para. 801(d)(2)(C)[01] at 801-210 (1984). However, in this instance the trustworthiness of an unsigned draft of a complaint which was not approved is especially troublesome. Similarly, although application of Rule 801(d)(2)(D) turns on whether the statement was made by an agent within the scope of his employment -- and a statement by an attorney would appear generally to qualify, the statement made [*16] in the draft complaint, viewed in conjunction with counsel's unanswered request for the client's review for accuracy, raises a substantial question about whether it was within the scope of the agent's authority for purposes of exemption from the hearsay rule. See Hoptowit v. Ray, 682 F.2d 1237, 1262 (9th Cir. 1982). In view of the inapplicability of the

1985 U.S. Dist. LEXIS 17545, *

exception for admissions by a party opponent, the documents are also inadmissible hearsay.

E. Redaction of references to the monitoring method.

Based on Candle's proposed witness list, it appears that the article's authors, Cantrell and Ellison, will be called at trial and will therefore have the opportunity to lay a foundation for admissibility of those portions of the article which Boole wants red acted. Accordingly, it is appropriate to continue to defer ruling pending presentation of foundation testimony.

F. Order of proof at trial.

Because of the factual and legal complexity of this case and for reasons of fairness and efficiency, the order of proof at trial shall be as follows:

1. Seminar for the jury and Court. Candle will begin with a discussion of hardware. Boole will follow with a discussion of hardware [*17] and software. Candle will then discuss software and the patent claim. Boole will then discuss the patent claim.

2. Opening statements. Candle, acting as plaintiff, will present its opening statement with respect to the validity issues first. Boole will follow with its opening statement on the same subject.

3. Background information. Boole will present the testimony of Gary Holtwick and Kenneth Kolence on the background of the problem solved by the invention and the invention's development with respect to on sale, experimental use and reduction to practice issues.

4. Validity. Candle will present its case with respect to the issues concerning the validity of the patent. Boole will then present its case on the same issues.

5. Opening statements. Boole, acting as plaintiff, will make its opening argument on the issue of infringement. Candle will then follow with its opening statement on the same subject.

6. Infringement. Boole, followed by Candle, will present evidence on the issue of patent infringement.

7. Closing arguments. Candle will present its closing argument on the validity issues. Boole will follow with its closing argument on the same subject to be followed by Candle's [*18] rebuttal. Boole will then begin its closing argument on infringement, followed by Candle's closing, and then Boole's rebuttal. At the end of the closing arguments, the jury will deliberate on the issues of validity and infringement with the use of a special verdict form.

8. Damages. In the event that the jury finds the patent valid and infringed, Boole will present its evidence on the issue of damages to be followed by Candle. The jury, or, if the parties agree, the Court, will then determine the amount of damages.

Excluding time for jury selection, pre-instruction and the seminar, a period of twenty days will be allotted for trial. Each side will have a total of ten days in which to present their evidence, including that presented on cross-examination, on all issues.

G. Evidence regarding Chernick's wealth or compensation.

Candle seeks to exclude as irrelevant and unfairly prejudicial any evidence concerning the wealth or compensation of its founder, chief executive and sole shareholder, Aubrey Chernick.

Evidence of Chernick's position with and compensation from Candle are relevant to whether he has an interest in the litigation and the issue of his credibility. Evidence [*19] of Chernick's position and interest in the financial well-being of Candle is not unfairly prejudicial. However, evidence of Chernick's personal wealth is not relevant.

H. Evidence regarding reduction to practice of Claim 1 of the patent.

While only the invention embodied in Claim 1 is at issue in this litigation, to the extent that reducing Claim 1 to practice involved techniques or problems also applicable to other claims, evidence regarding those techniques or problems is relevant to Claim 1 as well. Thus if the measurement technique mentioned in Claim 8 is also relevant to or solved the double-counting problem encountered with respect to Claim 1, evidence regarding the solution of the double counting problem is relevant to reduction to practice of Claim 1. No unfair prejudice, confusion or delay is indicated by the introduction of evidence concerning the double counting problem and its solution with respect to Claim 1.

At oral argument and in its post-hearing brief, Candle makes a number of arguments which are best resolved on a motion for summary judgment.

I. Evidence regarding "experimental use" or "experimental intent" by Boole after January 8, 1969.

Based [*20] on its reading of the Court's Order of September 21, 1985, Candle urges the Court to declare that there is no longer an issue regarding experimental use after January 8, 1969 -- the date of Booles' written contract proposal to Bell Laboratories. Accordingly, Candle seeks an order barring evidence of experimental use or experimental intent after that date.

1985 U.S. Dist. LEXIS 17545, *

Even if the Court's September 21 Order precludes evidence concerning experimental use or intent at Bell Labs, Boole may still put on evidence concerning experimental use or intent at the other test sites. Such evidence is appropriate if Candle does not establish that the invention was reduced to practice by January 8, 1969, when the Bell Labs contract was offered.

At the same time, Boole is also not precluded from introducing evidence regarding experimental use or testing as it bears on the state of mind of the inventors at the time of applying to the PTO for the patent.

Accordingly, IT IS ORDERED THAT

A. Boole's motion to exclude "industry estoppel" evidence is GRANTED;

B. Boole's motion to bar reference to the effect of injunctive relief on Candle's employees is GRANTED;

C. Boole's motion to bar the use of the term monopoly" [*21] is GRANTED;

D. Boole's motion to order the return of and exclude certain privileged documents is GRANTED;

E. Boole's motion to redact portions of certain articles is DENIED;

F. Proof at trial shall be accordance with that outlined above;

G. Candle's motion to exclude evidence regarding Aubrey Chernick's personal wealth and compensation is GRANTED IN PART;

H. Candle's motion to confine evidence regarding reduction to practice to Claim 1 of the patent is DENIED; and

I. Candle's motion to exclude evidence regarding Boole's "experimental use" or "experimental intent" after January 8, 1969 is DENIED.

J. The trial date is continued to February 4, 1986 at 9:00 a.m. The parties shall exchange witness and exhibit lists no later than 30 days before the start of the trial.