**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

**Playtex Products, Inc.,**

        **Plaintiff,**

v.                                                                     **Case No. C-1-02-391
Judge Thomas M. Rose**

**The Proctor & Gamble Distributing Company,
and The Proctor & Gamble Company,**

        **Defendants.**

---

**ENTRY AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT BASED ON *MARKMAN* RULING.** (DOC. 95).

---

Pending before the Court is Defendants' Motion for Summary Judgment of Non-Infringement Based on *Markman* Ruling (Filed Under Seal Pursuant to the October 25, 2002 Agreed Protective Order). Doc. 95. Defendants, who will be referred to collectively as "Proctor and Gamble," assert that in the wake of the Court's *Markman* decision there are no genuine issues of material fact that could prohibit the Court from awarding judgment to the Defendants as a matter of law on Plaintiff's claim that the Pearl Plastic product does not infringe U.S. Patent No. 4,536,178 (the "'178 patent").

**A.**    **Background**

The '178 patent defines in its first claim a tampon applicator with "two diametrically opposed, substantially flattened surfaces." The Court has defined this language to mean "two opposite or opposed surfaces that are flat within a geometric, manufacturing tolerance; the flat

surfaces may or may not have imperfections or surface features such as ribs or treads." Doc. , at 14. The claim construction opinion in another part described this construction as "exclud[ing] curvature." *Id.*, at 12.

Now Proctor and Gamble asserts that its Pearl Plastic Product does not literally infringe the '178 patent. Proctor and Gamble further asserts that it is entitled to summary judgment on the theory that there is no evidentiary support for the proposition that the Pearl Plastic finger grip "enabl[es] a user to comfortably eject and control the position[ing] of [a] tampon," as the device described in the first claim of the '178 patent does. Finally, in relation to Playtex's assertion that the Pearl Plastic product infringes Playtex's patent under the doctrine of equivalents, Proctor and Gamble asserts that the Court's reference to its claim construction as excluding devices with curved surfaces prevents utilization of the doctrine of equivalents in the instant case. Because Playtex's Patent does not cover devices with entirely curved surfaces, the Court will find that the Pearl Product does not infringe the '178 patent and, moreover, does not infringe by virtue of the doctrine of equivalents.

**B.      Summary Judgment Standard**

The standard of review applicable to motions for summary judgment is established by Federal Rule of Civil Procedure 56 and associated case law. Rule 56 provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Alternatively, summary judgment is denied "[i]f there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor

of either party." *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir. 1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505 (1986)). Thus, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548 (1986).

The party seeking summary judgment has the initial burden of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions and affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Id.*, at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S., at 250, 106 S. Ct. 2505 (quoting Fed. R. Civ. P. 56(e)).

Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 106 S. Ct. 1348 (1986). Rule 56 "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S., at 324, 106 S. Ct. 2548.

In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in the favor of that party. *Anderson*, 477 U.S., at 255, 106 S. Ct. 2505. If the parties present conflicting evidence, a court may not decide which evidence to believe by determining which parties' affiants are more credible. 10A

Wright & Miller, *Federal Practice and Procedure*, § 2726.  Rather, credibility determinations must be left to the fact-finder.  *Id.*

Finally, in ruling on a motion for summary judgment, "[a] district court is not…obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989).  Thus, in determining whether a genuine issue of material fact exists on a particular issue, the court is entitled to rely upon the Rule 56 evidence specifically called to its attention by the parties.

**C.    Analysis**

The Pearl Plastic tampon applicator is designed so as to be curved on all of its surfaces.  Doc. 95, Ex. 2; Doc. 38, Att. 12 at 12.  The surface of the Pearl Plastic applicator appears as a curved surface.  Doc. 95, Ex. 1.  Playtex's experts agree that the Pearl Plastic applicator finger grip area is curved.  Turchi Depo. at 12, 19; Hutchinson Depo. 71.[1]

In response to the Court's *Markman* ruling Playtex has submitted expert reports that explain the unremarkable fact that some portion of any curve can be measured as falling within any given margin.  In the instant case, 7.1 mm of the Pearl Plastic finger grip falls within the ± 0.305 mm of

---

[1] At another place, Hutchinson asserts that the Pearl Plastic finger grip "is composed of two perfectly flat surfaces."  Doc. 105, ex. D at 3.  Hutchinson does not explain the basis for this assertion, but refers the Court to the Expert Report of Proctor and Gamble's expert.  Proctor and Gamble's expert had plotted points of an actual Pearl Plastic applicator through a process entailing "slight measurement uncertainty on the radius of curvature calculation."  Doc. 38, Ex. 12 at 9.  An "'opinion has a significance proportioned to the sources that sustain it.'" *Mid-State Fertilizer Co. v. Exchange Nat. Bank of Chicago*, 877 F.2d 1333, 1339 (7th Cir. 1989) (Easterbrook, J.) (quoting *Petrogradsky Mejdunarodny Kommerchesky Bank v. National City Bank,* 170 N.E. 479, 483 (1930) (Cardozo, J.); see also *Monks v. General Elec. Co.*, 919 F.2d 1189, 1193 (6th Cir. 1990).  Hutchinson's failure to explain the basis for his assertion, combined with the fact that it simply refers to a report that does not explain whether it is capable of supporting the assertion Hutchinson makes deprives it of evidentiary credibility.

flatness, the Society of the Plastic Industry standard zone of manufacturing tolerance for "fine" low density polyethylene. Doc. 104 at 5. Hutchinson Supp. Report at 2, Turchi Supp. Report at 2-3. Utilizing Playtex's reasoning, the Court would be confined to conclude that a perfect sphere the size of Earth, with a radius of about 6,350 kilometers, for which at any point some 1.76 meters would come within ± 0.305 mm of flatness,[2] is flat. No reasonable juror could so conclude.

Moreover, the '178 patent was distinct from earlier patents in that earlier patents concerned designs that contained "essentially cylindrical" and "relatively cylindrical" finger grips. Doc. 1, Ex. A, col. 1, ll. 66-67; col. 1, l. 8. The fact that the portion of the Pearl Plastic applicator which Playtex asserts is flat is in actuality defined as an arc of a circle renders it impossible to conclude that it is a substantially flat surface within the claim as constructed by the Court. This leaves Playtex with the doctrine of equivalents as its only remaining theory for proving infringement.

Infringement under the doctrine of equivalents requires that the accused product contain each claim element or its equivalent. *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40, 117 S.C. 1040 (1997). An element in the accused product is equivalent to a claim element if the differences between the two are "insubstantial" to one of ordinary skill in the art. *Warner-Jenkinson*, 520 U.S. at 39-40. One method for determining whether differences are insubstantial is to look at whether the alleged equivalent (1) performs substantially the same overall function or work, (2) in substantially the same way, (3) to obtain substantially the same overall result as the claimed invention. *Id.* at 40. While this "function, way, result" test is not the exclusive way to determine equivalency as other factors may be considered, it is sufficient for this determination. *Id.* at 39-40.

---

[2] If $(x-r)^2 + y^2 = r^2$; and r = 6,350 km and x = .61 mm; then y ≈ 88 cm. 2y = 176 cm.

One rule of the doctrine of equivalents, however, is the "all elements" rule. Under the all elements rule, an accused device "must contain every claimed element of the invention or the equivalent of every claimed element." *Kustom Signals Inc. v. Applied Concepts, Inc.*, 264 F.3d 1326, 1333 (Fed. Cir. 2001) (citing *Warner-Jenkinson*, 520 U.S. at 29). "No claimed element, or an equivalent thereof, can be absent if the doctrine of equivalents is invoked." *Id.* The all elements rule prevents a finding of infringement under the doctrine of equivalents where to do so would "entirely vitiate a particular claim element." *Bell Atlantic Network Servs., Inc. v. Covad Communications Group, Inc.*, 262 F.3d 1258, 1279-80 (Fed. Cir. 2001). It therefore serves as a limit to the doctrine of equivalents. *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29, 117 S. Ct. 1040 (1997). Courts have cautioned however, that applying the all elements rule rigidly would adhere to a rule of strict literalism the doctrine of equivalents was designed to prevent. *Cf. Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki*, 535 U.S. 722, 122 S. Ct. 1831, 1841 (2002). By definition, an accused product infringing by equivalents does not literally include at least one element of the claimed invention. *See Warner-Jenkinson*, 520 U.S. at 21; *Graver Tank*, 339 U.S. at 607-08.

In the instant case, one element of the '178 patent is entirely missing, that of "two diametrically opposed, substantially flattened surfaces." Moreover, there is no genuine issue of fact concerning whether the Pearl Plastic finger grip provides improved tactile control in "substantially the same way" as the '178 patent. Indeed, the '178 patent attempts to do so by means of flat surfaces, while the Pearl Plastic does so by means of curved contoured surfaces. Thus, Playtex cannot prevail on the doctrine of equivalents.

**Conclusion**

Wherefore, Defendants' Motion for Summary Judgment of Non-Infringement Based on *Markman* Ruling (Filed Under Seal Pursuant to the October 25, 2002 Agreed Protective Order), Doc. 95, is **GRANTED.** This decision terminates Playtex's claim against Proctor and Gamble, leaving before the Court Proctor and Gamble's cross-claim against Playtex.

**DONE** and **ORDERED** in Dayton, Ohio, this Monday, November 3, 2003.

S/Thomas M. Rose
_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel for Parties